*Hedstrom Corp. v. JumpSport, Inc.*
Case No. 03 12308 PBS

# Exhibit D

## to Declaration of Daniel J. Kroll
## in Support Of Defendant JumpSport, Inc.'s Motion to Dismiss or Transfer

120336.1

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FILED
JUN X 2 2003
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JUMPSPORT, INC.,

  Plaintiff,

v.

JUMPKING, INC., et al.,

  Defendants.
_____/

No. C 01-4986 PJH

**ORDER**

Defendants' motions for summary judgment came on for hearing on May 21, 2003 before this court, the Honorable Phyllis J. Hamilton presiding. Plaintiff appeared by its counsel Peter Goldsmith and Christine Amatruda, and defendants appeared by their counsel Larry Laycock, Robert Aycock, and Kevin Gannon. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby rules as follows for the reasons stated at the hearing.

## BACKGROUND

Defendants have moved for summary judgment under 35 U.S.C. § 102 and § 103, claiming that the Jumpsport trampoline enclosure is either anticipated or rendered obvious by two references, the Curtis trampoline enclosure and the Rich trampoline enclosure.[1]

The Curtis enclosure was built in 1987 by William Curtis for his family's personal use, and placed in his backyard. It was never manufactured. However, Curtis made the family trampoline, with the enclosure around it, generally available for use by people in his

---

[1] Jumpsport has asserted the following claims: claims 1-3, 7, 8, 11-13, 15, and 17 of the '845 patent, and claims 1, 5, 9, 10, 14-18, 21, 23-26, 28, 29, 31-35, 37, 38, and 40 of the '207 patent. Defendants claim that claims 1-3, 11, and 17 of the '845 patent and claims 1, 5, 9, 10, 14-18, 23, 25, 26, 32-34, and 40 of the '207 patent are anticipated, and that all other asserted claims (claims 7, 8, 12, 13, and 15 of the '845 patent and claims 21, 24, 28, 31, 35, 37, and 38 of the '207 patent) are obvious.

1  neighborhood until spring 2001. Curtis estimates that hundreds of people, 80 percent of
2  whom were children, saw or used the trampoline enclosure. Curtis also presented the
3  enclosure to two companies, Weslo Co. in 1987 and Lifetime Products, Inc. in 1991, to
4  evaluate its commercial viability.[2] Neither company was interested in commercializing it.

5  Curtis provided contemporaneous photographs of the trampoline, which show some
6  of the features at issue, and provided testimony concerning the remainder of the features.
7  Curtis also provided drawings made after the commencement of this litigation that further
8  illustrated the details of his enclosure. Certain details of the enclosure were also
9  corroborated through the oral testimony by Jeremy Wright, who had played on the
10 trampoline as a child.

11 The Rich enclosure was built in the late 1970s, and at least by Feb. 1, 1979. Rich
12 subsequently made improvements on his enclosure and developed a second enclosure.
13 Rich made about 15-20 models of each enclosure system, and began publicly displaying
14 and offering the enclosures for sale around 1979. By 1982, Rich claimed he had sold
15 most, if not all, of the enclosures in yard sales along a public highway. Rich provided
16 several drawings of his trampolines, all made after their invention, and provided testimony
17 concerning the details of the system. This testimony was corroborated by Floyd Hoover,
18 Rich's former employee.

19 Rich has licensed various trampoline enclosure systems to Variflex, which was
20 formerly a defendant in this action.[3] Hoover currently works for Walmart, also a defendant
21 in this action.

22                                    **DISCUSSION**
23 A.    Legal Standard
24     Summary judgment is appropriate when the evidence shows there is no genuine

---

[2] Defendant ICON Health and Fitness is Weslo's successor company.

[3] Variflex recently reached a "settlement in principle" with Jumpsport. Amatruda Decl. ¶ 2.

2

1  issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.
2  R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court will
3  resolve all disputed issues of fact in favor of the non-moving party. Anderson, 477 U.S. at
4  255.
5       Since an issued patent is presumed valid, 35 U.S.C. § 282, invalidity must be
6  proven by clear and convincing evidence. See, e.g., Schumer v. Laboratory Computer
7  Syst., 308 F.3d 1304, 1315 (Fed. Cir. 2002) (citations omitted).
8  B.   Anticipation
9       1.   Legal Standard
10      A patent is anticipated if a single invention that can be considered prior art contains
11 all the elements of the patent. See, e.g., Moba, B.V. v. Diamond Automation, Inc., 325
12 F.3d 1306, 1321-22 (Fed. Cir. 2003) (citations omitted). Anticipation is a question of fact,
13 but summary judgment on anticipation may be granted as a matter of law if no material
14 facts are in dispute. See, e.g., Trintec Industries, Inc. v. Top-U.S.A. Corp., 295 F.3d 1292,
15 1294 (Fed. Cir. 2002) (citations omitted); Netscape Communications Corp. v. Konrad, 295
16 F.3d 1315, 1320 (Fed. Cir. 2002) (citation omitted).
17      Defendants claim that the Jumpsport patents are invalid due to anticipatory prior
18 public use or sale, by either the Rich enclosure or the Curtis enclosure. Under this
19 doctrine, an inventor may not obtain a patent if the invention was available to the public, or
20 offered for sale, in the United States more than a year before the patent application was
21 filed. 35 U.S.C. § 102(b). This includes not only the inventor's invention but any use of an
22 identical invention by a person who is not bound to secrecy concerning that invention's
23 use. New Railhead Mfg., LLC v. Vermeer Mfg. Co., 298 F.3d 1290, 1297 (Fed. Cir. 2002),
24 cert. denied, 123 S. Ct. 1357 (2003) (citations omitted). Here, the Jumpsport patents have
25 a filing date of June 20, 1997, so any anticipatory uses before June 20, 1996 may

(Left margin: United States District Court, For the Northern District of California)

potentially invalidate the patents.[4]

2.  Public Use

Jumpsport first argues that as a matter of law, the Curtis enclosure was only privately used, and thus never sufficiently "publicly displayed" for the § 102(b) bar to apply.[5]

Whether the use of an invention is "public" for the purposes of 35 U.S.C. § 102(b) is properly decided on summary judgment. "Whether a public use has occurred is a question of law. In considering whether a particular use was a public use within the meaning of section 102(b), we consider the totality of the circumstances in conjunction with the policies underlying the public use bar." <u>Baxter v. Cobe Laboratories</u>, 88 F.3d 1054, 1058 (Fed. Cir. 1996) (citations omitted).

These factors include, among others, "[t]he nature of the activity that occurred in public; the public access to and knowledge of the public use; whether there was any confidentiality obligation imposed on persons who observed the use," and the amount of control maintained over the invention. <u>Netscape</u>, 295 F.3d 1321-22 (citations omitted). This serves to further the policies behind the public use doctrines, which include "discouraging the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available, and favoring the prompt and widespread disclosure of inventions," among others. <u>Baxter</u>, 88 F.3d at 1054 (citation omitted).

Viewing the situation as a whole, Curtis made no effort to conceal his trampoline enclosure, or to control or monitor its use by people in the neighborhood, and he did not require that people using the trampoline enclosure keep its use confidential. People in the neighborhood were free to use the trampoline enclosure, and did so. While Curtis maintained control of the trampoline in the sense that it always remained in his backyard,

---

[4] Both patents in suit, U.S. Patent No. 6,053,845 and U.S. Patent No. 6,261,207, claim the benefit of the filing date of the Provisional Application No. 60/050,323, which was filed on June 20, 1997.

[5] Because Jumpsport contends that the public use of the Rich enclosure was insufficiently corroborated, public use of that enclosure is discussed below in the section on corroboration.

4

1  he did not control access to it by, for example, keeping it behind a locked gate or posting a
2  no trespassing sign. As a matter of law, the Curtis enclosure was in public use. See
3  Baxter, 88 F.3d at 1058-59 (public use found when invention was located in a public area,
4  inventor made no effort to keep invention confidential, and there was a "free flow" of people
5  observing the invention in use); Beachcombers v. Wildewood Creative Prods., 31 F.3d
6  1154, 1159-60 (Fed. Cir. 1994) (upholding jury verdict finding public use based on one
7  display at a private party of 20-30 guests where there was no expectation of confidentiality
8  and feedback on the device was solicited); Netscape, 295 F.3d at 1321-22 (public use
9  found when invention was demonstrated to a select number of people without expectation
10 of confidentiality and when inventor allowed people to use the invention without
11 monitoring); cf. Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1265-66 (Fed. Cir.
12 1986) (no public use as a matter of law when totality of the circumstances demonstrated
13 that inventor kept control over the device at all times and had expectation of confidentiality
14 in his invention).

15    3.   Corroboration

16 Jumpsport next claims that defendants have not adequately corroborated the Curtis
17 and Rich enclosures to permit them to be used as potentially-invalidating prior art.

18    a.   Legal Standard

19 A party claiming prior inventorship must provide corroboration of the specifics of the
20 potentially-invalidating invention before the invention may be considered by the court.
21 Sandt Technology, Ltd. v. Resco Metal and Plastics Corp., 264 F.3d 1344, 1350 (Fed. Cir.
22 2001) (citations omitted). The court uses a "rule of reason" when determining whether the
23 prior invention has been corroborated, and examines "all pertinent evidence" to determine
24 credibility. "Each corroboration case must be decided on its own facts with a view to
25 deciding whether the evidence as a whole is persuasive." Id. (citations omitted).
26 Unresolved questions of fact concerning the credibility of corroborating witnesses may not
27 be resolved on summary judgment. See id at 1353 n. 2 (permitting summary judgment on
28

corroboration only when no questions of fact are raised).

In particular, oral testimony standing alone has been long held insufficient to corroborate a claimed prior invention.

> In view of the unsatisfactory character of such [oral] testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have . . . required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. . . . The very fact . . . that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined that he had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny.

The Barbed Wire Patent, 143 U.S. 275, 284-85 (1892) (rejecting oral testimony of 24 witnesses corroborating allegedly-invalidating art). See also, e.g., Sandt, 264 F.3d at 1351 ("post-invention oral testimony is more suspect, as there is more of a risk that the witness may have a litigation-inspired motive to corroborate the inventor's testimony, and that the testimony may be inaccurate"). In other words, there must be some evidence other than oral testimony that corroborates the details of an invention before it can be used to invalidate a patent under 35 U.S.C. § 102(b). Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 737-38 (Fed. Cir. 2002), cert. denied, Orange Bang, Inc. v. Juicy Whip, Inc., 123 S. Ct. 537 (2002), citing Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1366-68 (Fed. Cir. 1999).[6]

In evaluating credibility, the court follows several guidelines. "Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention." Juicy Whip, 292 F.3d at 743; see also Sandt, 264 F.3d at 1351 ("Because documentary or physical evidence is created at the time of conception or reduction to practice, the risk of litigation-inspired fabrication or

---

[6] This high standard is not intended necessarily to reflect poorly on the credibility of the witnesses. "Rather, with the guidance of precedent cautioning against the reliance on oral testimony alone, we hold that the evidence of record [consisting solely of oral testimony] did not provide the clear and convincing evidence necessary to invalidate the patent for prior public knowledge." Juicy Whip, 292 F.3d at 743.

6

exaggeration is limited"). However, if no direct evidence is available, circumstantial evidence may be used to corroborate as well. Sandt, 264 F.3d at 1351.

Factors to be examined in evaluating the credibility of the corroborating evidence include: 1) the relationship between the claimed inventor and the corroborating witness; 2) the time elapsed between the invention and the testimony; 3) any interest on the part of the corroborating witness in the dispute at hand; 4) contradictory or impeaching evidence against the corroborating witness; 5) the extensiveness of the corroborating witness's testimony; 6) the corroborating witness's familiarity with the subject matter at hand; 7) the probability of a potential prior use at that time; and 8) the impact of the invention on the industry and the commercial value of the invention. Sandt, 264 F.3d at 1351 (citations omitted).

    b. Rich Enclosure

Jumpsport claims that neither the details of the Rich enclosure, nor the specifics of its alleged public use and offers for sale, are sufficiently corroborated to rise to the level of clear and convincing evidence of invalidity.

Rich produced no contemporaneous documentary evidence supporting his claims. Rich admitted that his drawings of the enclosures were all made after the conception of the invention and that he added the dates "1979" to the drawings after they were made. Rich Depo. 132:13-133:14. Furthermore, the post-dated drawings produced were photocopies, and Rich could not locate the originals. Id. at 52:23-53:14. Rich speculated that perhaps the originals were lost during the 1994 floods in south Georgia (where he lives). Id. 21:20-22:10, 23:13-21.

The drawings also do not specifically illustrate many of the key details of the Rich enclosure, such as the entryway, the method of the netting's attachment to the poles or frame, the end caps, or the shock-absorbing foam sheaths. Thus, the only testimony concerning those details is solely oral testimony from Rich. That testimony at times contradicted previous declarations by Rich. Compare Rich Decl. ¶ 5 (stating that netting

7

1  was tied to the poles) <u>with</u> Rich Depo. 31:20-23 (netting was not tied to poles).  Rich also
2  had no other corroborating documentary evidence of the enclosure or his subsequent
3  public use and offers to sell the enclosure.  Rich speculated that the other evidence was
4  also lost in the floods.  <u>Id</u>. at 40:15-19.

5        Finally, Rich can be considered an interested witness in this matter, because he has
6  a licensing arrangement with Variflex, formerly a defendant in this matter.  <u>See</u> Shulman
7  Decl. Exh. A (license agreement between Rich and Variflex); Rich Depo. 180:8-21.

8        Jumpsport contends that Hoover's testimony was similarly non-credible.  Hoover is
9  employed by Wal-Mart, another defendant in the action, as a truck driver.  Hoover Depo.
10 7:8-12.[7]  Hoover could not recall many of the details of the enclosure, and said that he
11 would defer to Rich's memory on those issues.  <u>Id</u>. at 33:11-19.  Hoover could not recall
12 any specifics concerning any sale of the enclosures and was not sure if he had sold any of
13 them.  <u>Id</u>. at 130:9-132:10 (stating that he "might" have sold enclosures).

14       Hoover's testimony was also repeatedly impeached as to whether he had drafted a
15 declaration used in this litigation, whether defendants' counsel had drafted it for him, and
16 whether the declaration accurately represented that Hoover had looked at the drawings
17 and that the drawings accurately reflected the invention.  Hoover Depo. 105:19-21; 141:11-
18 142:2, 144:9-17.

19       In reviewing Rich and Hoover's testimony as a whole, Jumpsport has raised serious
20 questions of fact concerning their credibility.  Rich is strongly affiliated with former
21 defendant Variflex in this matter, and Hoover has an employment relationship with
22 defendant Walmart and was formerly employed by Rich.  Almost 25 years has passed
23 since the invention of the trampoline enclosures in question.  There are no

---

[7] The relevant portions of Hoover's declaration are attached at Amatruda Decl. Exh. C.

8

contemporaneous documents supporting Rich's testimony.[8] Furthermore, both witnesses were impeached on a number of issues, and several of the key details of the enclosure remain uncorroborated. Under the Sandt factors, and resolving all disputed questions of fact in favor of non-movant Jumpsport, this is insufficient to find corroboration of the Rich invention, or even public use, as a matter of law. See also, e.g., Juicy Whip, 292 F.3d at 743 (no corroboration found when only evidence provided was the oral testimony of six witnesses and drawings made after invention's conception). The Rich enclosure thus may not be used to invalidate the Jumpsport patents on summary judgment.

    c.  Curtis enclosure

All parties concede that Curtis does not have an interest in the outcome of this litigation. Nonetheless, all details of Curtis's invention must still be corroborated for the enclosure to serve as prior art. Finnegan, 180 F.3d at 1369 ("corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest").

Curtis provided partial photographs of the enclosure, which the parties agree were taken around 1991. Curtis also provided oral testimony concerning the construction of the enclosure, and diagrams of the trampoline that were drawn by counsel in this matter after this litigation commenced. Curtis has testified that the diagrams accurately depict the enclosure. Wright also provided oral testimony concerning certain details of the enclosure.

The photographs, though, are the only contemporaneous documentary evidence of the Curtis enclosure. Those photographs illustrate some of the details of the Curtis enclosure, but not all of them. Namely, the photographs do not illustrate the nature of the

---

[8] Defendants claim that while Rich may have post-dated the documents labeled "1979," Rich testified that he dated a document labelled "1982" in 1982. Defendants concede that this drawing does not form the basis of their invalidity motion, Def. Reply Br. Re Anticipation at 6 n. 3, but argue that this document serves to authenticate retroactively the documents labelled "1979," since the 1982 drawings are allegedly "improvements" on the 1979 document. Jumpsport claims that document has not been properly authenticated and moves to strike it. Since the document was authenticated by Rich, the court denies the motion to strike – but given the credibility issues raised by Jumpsport concerning Rich's testimony, the court gives the "1982" document no weight.

9

connection between the netting and the mat, the existence of a top or bottom line, or the existence of an overlapping entryway into the enclosure.[9]

None of the evidence offered by defendants sufficiently corroborates those details. As a matter of law, the post-dated drawings prepared by counsel and the oral testimony of Curtis and Wright are insufficient to corroborate the Curtis enclosure.[10] See, e.g., Lacks Industries, 322 F.3d at 1350 (oral testimony coupled with documents that do not specifically show the alleged details in invention legally insufficient for corroboration); Juicy Whip, 292 F.3d at 743. Construing all disputed issues of fact and credibility in favor of Jumpsport, there is insufficient corroboration for the Curtis enclosure to serve as prior art on these elements.

4.  Claims

Jumpsport admits that if Curtis is considered in public use, claims 16 and 40 of the '209 patent are invalid.[11] See Aycock Decl. Re § 102 Motion Exhs. 18, 20 (diagrams of invalidity claims). Summary judgment of invalidity pursuant to 35 U.S.C. § 102(b) is GRANTED on those two claims.

Due to the questions of fact concerning corroboration that remain, summary judgment is DENIED as to the remaining claims of invalidity for anticipation. Sandt, 264

---

[9] Defendants argue that the photographs illustrate some type of connection between the netting and the mat, a seam at the top of the net which could potentially be a vinyl strip, and an entryway that could have been closed with a velcro attachment. Viewing this photograph in the light most favorable to non-moving party Jumpsport, the court cannot state that any of the elements are shown clearly and convincingly. In the photographs, the precise connection between the netting and the mat is not portrayed, the seam at the top of the net is unclear, and the entryway appears to be a gaping opening in the net. While a contemporaneous photograph could potentially serve to corroborate details of an invention, these particular photographs are too ambiguous to do so here.

[10] In addition, Wright's testimony was only offered on the issue of the connection of the netting to the mat, and it was contradictory in places. See Wright Depo. 28:8-25 (first stating that he did not know how the net connected to the mat, and then, after a break, recalling that the net connected through the springs).

[11] Claim 16 covers a trampoline with a frame, mat, legs, independent poles, and flexible material coupled to the poles, where the flexible material, frame, legs, and poles are interconnected so the poles can act as tubular springs in the manner of a drawn bow. Claim 40 covers the trampoline of claim 16 where at least one pole does not touch the ground.

10

1  F.3d at 1353 n. 2. Thus, claim 1 of the '845 patent remains valid in light of Curtis because
2  it requires a connection between the netting and the mat, which Curtis has not
3  corroborated. Similarly, claims 17 and 18 of the '845 patent remain valid because they
4  require the presence of a top line, and claims 23 and 32 of the '845 patent remain valid
5  because they require the presence of an overlapping entryway. All claims that defendants
6  seek to invalidate in light of Rich remain valid due to the questions of proof concerning
7  any public use and the lack of corroboration concerning any of its details.[12]

C.   Obviousness

Alternatively, defendants argue that the Jumpsport patents are invalid for obviousness. Under 35 U.S.C. § 103, a patent may not be granted to an invention if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." In other words, a patent is considered invalid if at the time of invention, it would have been obvious for a person of ordinary skill in the art at that time to combine two or more pieces of prior art to create the invention for a reasonable likelihood of success. See, e.g., Wesley Jessen Corp. v. Coopervision, 207 F. Supp. 2d 1103, 1107 (C.D. Cal. 2002) (citations omitted).

Defendants' argument concerning the invalidity of the '845 patent claims, however, turns on the assumption that claim 1 of the '845 patent is already invalid due to Curtis's anticipation. See, e.g., Def. Opening Br. Re Obviousness at 17. The court has found that

---

[12] Defendants claim that the court's construction of the term "coupled to the independent poles and rebounding mat" implies that any component of the safety enclosure connected to any element that ultimately connects to the rebounding mat may be considered "indirectly" connected to the rebounding mat and thus covered by the patent. That interpretation of the claim construction is overbroad. Given the interconnected nature of the invention described in the Jumpsport patent, all the elements of the invention could conceivably be considered to be "indirectly connected" to the mat under defendants' interpretation. The plain meaning of the term "coupled . . . to the rebounding mat" does not encompass such a broad definition. The court therefore clarifies its construction of "coupled to the independent poles and rebounding mat" as: **connected to the independent poles and to the rebounding mat, either directly or through a discrete coupling device that is not an element of the trampoline or enclosure.**

11

Curtis does not anticipate claim 1 of the '845 patent due to the lack of corroboration concerning the connection of the netting to the mat. Since all other claims in the '845 patent depend on claim 1 of the '845 patent, they thus also require a connection of the netting to the mat, and therefore may be differentiated from Curtis on that basis alone.[13] Questions of fact thus exist as to the validity of all the claims of the '845 patent.

As for the '207 patent, defendants argue that claims 14, 21, 24, 28, 29, 31, 35, 37, and 38 are invalid due to a combination of Curtis and Rich. Since Rich cannot be considered prior art for the purposes of summary judgment, they may not be used to invalidate the Jumpsport patents. Finnegan, 180 F.3d at 1369. Defendants admit that, standing alone, the Curtis enclosure does not invalidate those claims either.[14]

Thus, the summary judgment motion for invalidity due to obviousness is DENIED.

Summary judgment of invalidity is thus GRANTED as to claims 16 and 40 of the '209 patent, and DENIED as to all other claims. Jumpsport's motions to strike are DENIED. This motion fully adjudicates the matters listed at nos. 249, 250, 272, and 273 on the clerk's docket for this case.

**IT IS SO ORDERED.**

Dated: June 2, 2003

PHYLLIS J. HAMILTON
United States District Judge

---

[13] For this reason, the court need not discuss the issues concerning defendants' proposed combination of the Curtis enclosure with the American Society for Testing and Materials, or the issues of secondary considerations of non-obviousness raised by Jumpsport.

[14] Defendants appear to argue alternately that Curtis anticipates claim 29 of the '207 patent due to the presence of the top line. Since the top line feature of the Curtis enclosure has not been corroborated, Curtis cannot invalidate the '207 patent on that basis. Finnegan, 180 F.3d at 1369.