*Hedstrom Corp. v. JumpSport, Inc.*
Case No. 03 12308 PBS

# Exhibit F

## to Declaration of Daniel J. Kroll
## in Support Of Defendant JumpSport, Inc.'s Motion to Dismiss or Transfer

120336.1




PETER H. GOLDSMITH
510-450-9655
PGoldsmith@lsglaw.com

November 10, 2003

Honorable Phyllis J. Hamilton
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:   **JumpSport, Inc. v. Jumpking, Inc., et al.**
             **Case No. C 01-4986 PJH (N.D. Cal.)**

To the Honorable Phyllis J. Hamilton:

    Pursuant to leave of Court granted on November 7, 2003, Plaintiff JumpSport, Inc. ("JumpSport") files this brief in support of its request that the Court reconsider its November 5, 2003 order limiting JumpSport's infringement contentions against Defendant Hedstrom Corporation to only one allegedly infringing Hedstrom product, the "JumpGuard" enclosure. The Court granted Hedstrom's request, submitted on the first day of trial, to so limit the claims in this action based on Plaintiff's Second Supplemental Disclosure of Asserted Claims and Preliminary Infringement Contentions ("Disclosure"), in which Hedstrom's "JumpGuard" trampoline enclosures were identified as the accused products. JumpSport respectfully submits that its claims should not be so limited because it is contrary to JumpSport's intent in the Disclosure, and is also inconsistent with JumpSport's and Hedstrom's conduct in this litigation, which generally included all of Hedstrom's trampoline enclosure products, which do not differ in any substantial way from the JumpGuard enclosures. In the alternative, JumpSport requests that the Court relieve it of its inadvertent error of specifying the "JumpGuard" enclosures in its Disclosure because of a mistaken belief that Hedstrom used the term "JumpGuard" on all its trampoline enclosure products. JumpSport has proceeded, and Hedstrom at a minimum has acquiesced, throughout the discovery and up to the trial preparation stages, under the understanding that JumpSport's claim extended to all the Hedstrom trampoline enclosures incorporating the same basic framework as the JumpGuard, and it would result in a manifest injustice to limit JumpSport to proceeding only against the JumpGuard products, when no further discovery or trial preparation, or any other prejudice, would result from construing the infringement claims to extend to all Hedstrom JumpGuard and similar trampoline enclosures.

    A.     Background

    JumpSport filed its preliminary disclosure of infringement contentions on June 10, 2002, a supplemental disclosure on July 13, 2002, and its Second Supplemental Disclosure on December 18, 2002. JumpSport's Complaint, amended most recently on September 12, 2002, always alleged that Hedstrom's trampoline enclosure products infringed both patents, without limiting the allegations to just one trampoline enclosure model. When it prepared its initial and subsequent Disclosures, JumpSport was under the mistaken impression that all of Hedstrom's trampoline enclosures were

117998.1

Honorable Phyllis J. Hamilton
November 10, 2003
Page 2

marketed under the name "JumpGuard."

JumpSport's discovery requests were directed to all of Hedstrom's enclosure products. Hedstrom produced documents relating to all units, not just JumpGuard models, including assembly manuals and sales records.[1] Moreover, in July 2002, after the initial Disclosure was filed, Hedstrom produced for inspection at its facilities nine trampoline enclosures, of which only two were JumpGuard models. Manuals for each of the units produced for inspection were marked as trial exhibits by Hedstrom, as were some of the inspection photographs. At the deposition of Hedstrom's 30(b)(6) deposition, its representative (Mr. Rieber) testified that the unitized units (the JumpGuard) included the same enclosures as the non-unitized units. *See* Rieber 8/1/02 Depo. 72:22-73:9 ("We do add an enclosure to a trampoline in the same box and it is the same enclosure essentially").

JumpSport's technical infringement expert, Stephen Velinsky, opined that all Hedstrom enclosures infringe both patents. Documents cited in support of his report included the photographs from the inspection of all Hedstrom enclosures, as well as Mr. Rieber's deposition. And while it is true that Hedstrom's infringement expert, Dr. McCarthy, addressed JumpGuard units in his report, since there is no substantive difference between the JumpGuard and non-JumpGuard units, his report would not differ.

JumpSport's damages expert, Mr. Hansen, calculated damages against Hedstrom in the amount of $2,292,349, which includes sales of all units. (By contrast, sales of JumpGuard products alone would reduce the damage claim against Hedstrom in this case to *approximately $20,000*.) Moreover, Mr. Hansen's analysis was that lost profits were recoverable for sales made by Hedstrom to Wal-Mart, which apparently does not sell the JumpGuard model. Mr. Hansen submitted reports dated October 18, 2002, January 7, 2003, January 29, 2003 and September 29, 2003, and consistently calculated damages for all of Hedstrom's enclosure sales. Hedstrom never disputed these figures. Rather, in response, Hedstrom's damages expert, Mr. Green, *relied upon the same total revenue figures, which included all non-JumpGuard enclosures.* On September 30, 2003, Hedstrom submitted trial exhibits for Mr. Green's testimony listing revenues from all Hedstrom sales, not just JumpGuard. Mr. Green further stated that Hedstrom's "trampoline enclosures are marketed under the brand name JumpGuard." Thus Mr. Green's understanding was the same as JumpSport's: that JumpGuard was merely a tradename for all Hedstrom enclosures.

JumpSport did not realize the significance of its misunderstanding until Hedstrom raised the issue in the pretrial filings. Since JumpSport never agreed to limiting language in the Joint Preliminary Jury Instructions or Joint Pretrial Statement, JumpSport assumed that it had adequately preserved its right to proceed against all Hedstrom enclosures. That JumpSport and Hedstrom first brought this dispute to the Court for resolution in the Joint Claims Chart should not operate to preclude JumpSport from asserting infringement against all Hedstrom enclosures, as it has done consistently in this litigation.

---

[1] JumpSport is uncertain if the Court expected exhibits to be submitted with this brief, but will make such submissions promptly if the Court requests them.

117998.1

B. The Court Should Interpret JumpSport's reference to Hedstrom's "JumpGuard" Enclosures As It Was Intended, Even If Inartfully Phrased.

Here, as discussed above, even though JumpSport used the term "JumpGuard" in describing the "Hedstrom" infringing products, the parties undertook discovery, both fact and expert, as well as other trial preparation efforts, under the assumption that -- as JumpSport intended and believed -- the infringement claims extended to all Hedstrom enclosures. Indeed, Hedstrom has litigated this case fully, submitting over 500 trial exhibits and designating 25 witnesses, as is warranted by the over $2 million damages claim made by JumpSport, in contrast to the litigation strategy it would have pursued defending a claim worth approximately $20,000. Such conduct underscores the appropriateness of construing JumpSport's contentions in a like manner, even if the language in the Disclosure was inartfully phrased. *Cf. Warner Constr. Corp. v. Los Angeles*, 2 Cal. 3d 285, 296-97 (1970) (in analogous contract interpretation scenario, the "construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court"), quoting *Woodbine v. Van Horn*, 29 Cal. 2d 95, 104 (1946); *Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744, 754 (1960) (where contract is ambiguous, the parties' post-execution conduct can assist in interpreting what the parties intended by certain language). As Hedstrom has testified, there is no meaningful difference between the units.

C. In the Alternative, The Court Should Relieve JumpSport Of Its Error In Using The Term "JumpGuard" When It Intended To Refer More Broadly To JumpGuard And Similar Hedstrom Trampoline Enclosures.

Although JumpSport is not aware of authority addressing relief from a patent infringement contention made in error, as here, a wealth of analogous authority exists in circumstances in which a party makes other kinds of pre-trial stipulations of fact, subsequently discovering that they were made in error. "Case law is clear that 'a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties.'" *Tex. Instruments Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995), quoting *Marshall v. Emersons Ltd.*, 593 F.2d 565, 568 (4th Cir. 1979). Under such authority, parties will usually be relieved of their stipulations where it becomes evident that "the agreement was made under a clear mistake." *Brast v. Winding Gulf Colliery Co.*, 94 F.2d 179, 180 (4th Cir. 1938). *See also In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 570 F.2d 899, 902 (10th Cir. 1978) ("the court may relieve a party from an improvident [discovery stipulation] or one that might work injustice").

Thus, in *Newsome v. Administrative Office of Courts of State of New Jersey*, 103 F. Supp. 2d 807, 815-16 (D.N.J. 2000), the district court exercised its discretion to amend a pretrial order in an employee's sexual harassment action to restore the employee's inadvertently omitted state statutory claims. The court held that excluding them would vitiate the employee's case because of the state statute's broader employer liability standards, and defendants would suffer no prejudice

Honorable Phyllis J. Hamilton
November 10, 2003
Page 4

from the amendment since the claim was pled in the complaint and discovery had already taken place with respect to it. *Id. See also Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27-28 (9th Cir. 1980) ("District courts should generally allow amendments of pre-trial orders when 'no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight'"); *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1369 (5th Cir. 1983) ("we have recognized that the trial court has not only the right but the duty to relieve a party from a pretrial stipulation 'where necessary to avoid manifest injustice and adjudications based on the sporting theory' . . . or where there is substantial evidence contrary to the stipulation"). *See also* Fed. R. Civ. P. 36(b) (court may permit a party to withdraw or amend discovery admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits").

Here, holding JumpSport to the narrow meaning of a contention that substantial evidence shows was intended to apply to all Hedstrom trampoline enclosures would work an injustice to the fair trial of JumpSport's infringement claims, and reward Hedstrom with an unfair windfall. Hedstrom prepared its case based on an analysis of all Hedstrom enclosures and waited until just a few weeks before trial (while the parties were laboring to prepare their voluminous pretrial filings, including the joint pretrial statement) to contend that any joint disclosures should reflect a limitation to "JumpGuard" products. In each instance, JumpSport declined to limit any assertion, even without understanding the significance of Hedstrom's request. The late assertion of this issue by Hedstrom, which never brought a motion on the issue, also underscores the lack of prejudice, in that Hedstrom has demonstrated it has already prepared its case based on the contention as JumpSport intended it. Limiting JumpSport to pursuing claims only as to the JumpGuard products would be contrary to the spirit of having all of JumpSport's claims tried on their merits. *Cf. Sam Galloway Ford, Inc. v. Universal Underwriters Ins. Co.*, 793 F. Supp. 1079, 1082 (M.D. Fla. 1992) (justice requires that erroneous stipulations be set aside so that cases may be decided on their merits).

D.  Good Cause Exists For Permitting Amendment Of JumpSport's Contentions Under Patent L.R. 3-7.

Even beyond the Court's power to relieve JumpSport of its mistake, the Court also has authority to allow JumpSport to amend its infringement contentions to conform to the evidence produced in discovery and the parties' trial preparation efforts. Under Patent L.R. 3-7, a Court may allow a party to amend or modify its infringement contentions upon a showing of "good cause."[2]

---

[2]   Although case authority construing Patent L.R. 3-7 is scarce, in *LG Elecs., Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002), a judge of this Court allowed plaintiff leave to amend its infringement contentions under Patent L.R. 3-7, to include certain of defendants' additional products, although defendant did not object to inclusion of certain of the products. Plaintiff argued that defendant thus could not be surprised or prejudiced by its request, since the parties undertook discovery and other trial preparation efforts not limited to the products specified in plaintiff's disclosure. *Id.* Although the Court approved of language from an earlier unpublished

117998 1

Honorable Phyllis J. Hamilton
November 10, 2003
Page 5

Such "good cause" exists here, in that JumpSport and Hedstrom have undertaken discovery and prepared for trial in contemplation that all Hedstrom trampoline enclosures are encompassed by the reference to "Hedstrom" enclosures in the Disclosures. Not only would there be a lack of prejudice to Hedstrom, but manifest injustice would result to JumpSport if it were limited to the small sub-set of JumpGuard products, with damages of only approximately $20,000.

Moreover, allowing the amendment would conserve the parties' and the Court's resources. If JumpSport were to be limited to pursuing claims only as to the JumpGuard products, it would simply bring a new and separate lawsuit alleging infringement as to the remainder of the Hedstrom trampoline enclosure products. *Cf. Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514 (Fed. Cir. 1993) (involving second lawsuit filed by inventor with respect to six of defendant's devices that were not before the court in the first lawsuit). In *Pfaff*, although the Federal Circuit held that certain of the determinations of fact or law in the first lawsuit would have collateral estoppel effect in the second lawsuit to the extent they involved overlapping issues, the "infringement claim" itself, for purposes of claim preclusion, did not embrace more than the specific devices before the court in the first suit. *Id.*, at 518.

In the present case, although rulings in the present lawsuit would likely have collateral estoppel effect in a subsequent lawsuit involving the remainder of Hedstrom's enclosure products, the parties and the Court would still be required to expend substantial resources litigating and adjudicating largely identical claims that could be resolved in the present lawsuit with the resources that the parties have already budgeted for this lawsuit. Thus, allowing amendment of the infringement contentions would spare a further, duplicative and wasteful trial devoted to the remainder of Hedstrom's trampoline enclosures, which would involve the same issues, evidence and arguments being litigated in this case.

Very truly yours,

Peter A. Goldsmith

cc:   Thomas O'Konski, Esq.
      David Wright, Esq.

---

decision interpreting the predecessor rule as having a "decidedly conservative" philosophy in amending claim charts, it nonetheless permitted plaintiff to amend the contentions to include products other than certain products that defendants specifically objected to as not capable of infringement. *Id.*, at 368. The unpublished earlier decision was construing previous L.R. 16-9(c), which allowed amendments to claim charts only in three narrow circumstances: (1) by stipulation; or by a showing to the Court of (2) "excusable subsequent discovery of new information" or (3) "clearly excusable neglect."

117998.1