*Hedstrom Corp. v. JumpSport, Inc.*
Case No. 03 12308 PBS

# Exhibit G

## to Declaration of Daniel J. Kroll
## in Support Of Defendant JumpSport, Inc.'s Motion to Dismiss or Transfer

120336.1

ROBERT A. CESARI
JOHN F. McKENNA
MARTIN J. O'DONNELL
THOMAS C. O'KONSKI
JOSEPH H. BORN
PATRICIA A. SHEEHAN
MICHAEL E. ATTAYA
CHARLES J. BARBAS
WILLIAM A. LOGINOV
MICHAEL R. REINEMANN
RITA M. ROONEY
JOHN L. CAPONE
MICHAEL J. BADZINSKI
ROBERT E. RIGBY, JR.
KEVIN GANNON
DUANE H. DREGER

# CESARI AND MCKENNA, LLP
### ATTORNEYS AT LAW
88 BLACK FALCON AVENUE
BOSTON, MASSACHUSETTS 02210

(617) 951-2500

INTELLECTUAL PROPERTY
AND RELATED
CAUSES

A. SIDNEY JOHNSTON
EDWIN H. PAUL
OF COUNSEL

STEPHEN E. KABAKOFF
JAMES M. BEHMKE
PATENT AGENTS

TELECOPIER
(617) 951-3927

WEB SITE
www.c-m.com

November 13, 2003

Honorable Phyllis J. Hamilton
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    JumpSport, Inc. v. Jumpking, Inc., et al.
              Civil Case No. C-01-4986

Dear Judge Hamilton:

      Hedstrom Corporation ("Hedstrom") submits this letter brief in support of the Court's November 6, 2003 Order denying JumpSport's request for leave to amend its infringement contentions against Hedstrom, and in opposition to JumpSport's request that the Court reconsider that Order. The Court's Order is squarely supported by the Northern District's Patent Local Rules and the reasons for which they were enacted, and it is consistent with the case law which interprets those rules. The Order is well founded upon the facts of this case, which demonstrate JumpSport's actual knowledge of the distinctions in Hedstrom's product line and JumpSport's inexcusable failure to comply with its obligation to amend its infringement contentions. The Order also properly balances the equities in this case based upon the facts as they actually exist, rather than upon JumpSport's exaggerations regarding the alleged prejudice to it in its last-minute attempt to broaden its infringement contentions. For each of these reasons, the Court's November 6th Order should not be disturbed.

I.     The Denial of JumpSport's Belated Attempt to Amend Its Final Infringement Contentions is Well-Founded Under the Law.

      Patent L. R. 3-1 provides that a party claiming infringement must serve on all parties a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" ("PICs"), which specify each claim of each patent in suit that is allegedly infringed and each product accused. Patent L.R. 3-6 provides that those PICs will be deemed to be that party's final contentions, except under limited circumstances set forth in that rule. Supplementation without leave of court is permitted under that rule, only if completed within 30 days after service of the Court's claim construction ruling and only as it relates to information required under Patent L.R. 3-1(c) and (d). Patent L.R. 3-7 mandates that leave of court is required and that good cause must be shown for amendment to those PICs for any other reason.

      This Court has considered the application of Patent L.R. 3-7 in conjunction with a plaintiff's request to amend its infringement contentions under Patent L.R. 3-1(b) to add additional allegedly

# CESARI AND MCKENNA, LLP

Hon. Phyllis J. Hamilton
November 13, 2003
Page 2

infringing products on at least three prior occasions. In each instance, the Court has denied that request on the grounds that it was made too late in the proceedings and that permitting such a late amendment would undermine the fundamental philosophy with which the Patent Local Rules were enacted. In *LG Electronics, Inc. v QLity Computer, Inc*, 211 F.R.D. 360, 367 (N.D. Cal. 2002), U. S. Magistrate Judge Elizabeth Laporte summarized that fundamental philosophy as follows:

> The patent local rules were adopted by this district in order to give claim charts more "bite". The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.... Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the "shifting sands" approach to claim construction.

(citing *Atmel Corp. v Information Storage Devices, Inc*, No. C 95-1987 FMS, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D. Cal. 1998)). Judge Laporte also noted this Court's continued adherence to this philosophy in her citation of two other recent Northern District decisions wherein plaintiffs were denied leave to amend their infringement disclosures at the summary judgment stage of the case because, to do otherwise "would encourage the 'vexatious shuffling of positions' that the patent local rules were designed to avoid." *Id* (citing *E-Pass Tech., Inc. v 3Com Corp.*, 222 F. Supp.2d 1157 (N.D. Cal. 2002); *JSR Corp. v Tokyo Ohka Kogyo Co., Ltd*, No. C 99-20156 JW, 2001 U.S. Dist. LEXIS 24959, at *18 (N.D. Cal. 2001)).

Contrary to JumpSport's assertions, in *LG Electronics*, Judge Laporte <u>did</u> deny plaintiff leave to amend its infringement contentions and add additional allegedly infringing products to the litigation under Patent L.R. 3-7 for <u>all</u> products other than those which the defendants had actually consented to include in the litigation. *LG Electronics*, 211 F.R.D. at 373-4. Leave to amend was denied notwithstanding plaintiff's arguments that they did not know that the defendant manufactured the products sought to be accused, that the defendant would not be prejudiced because the products they sought to add were identified from the defendants' document production, and that the infringement analysis for those products would be nearly identical to those for products previously identified. *Id* at 367-8. In rendering her decision, Judge Laporte acknowledged that no trial date had been set in the case, but clearly concluded that "[t]o allow [the plaintiff] to add these new products at this late date would cause significant delay that easily could have been avoided." *Id* at 372. *See also*, *E-Pass*, 222 F. Supp.2d at 1161. The facts of this case are much more compelling.

JumpSport was made aware that Hedstrom manufactures and sells both JumpGuard and non-JumpGuard trampoline enclosure products at least as early as July 10, 2002, when Hedstrom first produced its assembly manuals for those products in response to JumpSport's broad production requests. Exemplary copies of the cover pages for those manuals and the 2002-03 enclosure sales list for those products are attached hereto as Exhibits 1, 2 and 3, respectively. JumpSport was again made aware that Hedstrom used the name JumpGuard to describe only its unitized trampoline enclosure products during the deposition of Hedstrom's Rule 30(b)(6) witness, Mr. Fred Rieber, on August 1, 2002. *See* Deposition of Fred Rieber, at 71:13 to 72:10, a copy of which is attached hereto as Ex-

# CESARI AND MCKENNA, LLP

Hon. Phyllis J. Hamilton
November 13, 2003
Page 3

hibit 4. Even though JumpSport amended its PICs twice, it never amended them to accuse any Hedstrom product other than its JumpGuard products.

JumpSport clearly knew of Hedstrom's argument that JumpSport's infringement contentions were limited to its JumpGuard product line prior to the Court's Final Pretrial Conference, on October 6, 2003. Weeks before that conference, JumpSport's counsel participated in preparing joint pretrial submissions in which Hedstrom clearly stated that position. *See* Joint Pretrial Statement and Joint Set of Proposed Jury Instructions, relevant excerpts of which are attached hereto as Exhibits 5 and 6, respectively. JumpSport was again reminded of Hedstrom's position concerning the limitation on JumpSport's infringement contentions after the Final Pretrial Conference and prior to the start of trial, when the parties prepared the Joint Comprehensive List of Allegedly Infringing Claims, relevant excerpts of which are attached hereto as Exhibit 7. Despite its actual knowledge, despite Hedstrom's repeated statement of its position, and admittedly without excuse, JumpSport waited until the first day of trial to request leave to amend its PICs under Patent L.R. 3-1(b) to charge additional Hedstrom products as infringing the patents in suit.

The Patent Local Rules are clear, the law in this area is clear and the propriety of the Court's initial ruling is equally clear. Because JumpSport waited to present the Court with its request on the first day of trial, there is no question but that it was too late for the request to merit any consideration. Its request for reconsideration of the Court's Order, presented after one full week of a fourweek trial, is also too late. Reconsideration of JumpSport's motion would contravene and undermine the philosophy underlying the enactment of the Patent Local Rules and the decisions of this Court that have interpreted those rules.

II. JumpSport's Claim of Prejudice Is Overstated and Does Not Constitute "Good Cause" Pursuant to Patent Local Rule 3-7.

In its letter brief, JumpSport alleges that the reduction in the damage award from Hedstrom that could result if its reconsideration request is denied should excuse its admitted failure to comply with the Local Patent Rules. *See* Letter of Peter Goldsmith dated November 10, 2003 (hereinafter "Goldsmith"), at pp. 2, 5. There are several reasons why this is not the case. First, as JumpSport selected this forum to adjudicate its claims, JumpSport was responsible for knowing and abiding by the Local Patent Rules and its failure to do so is its own fault, not Hedstrom's. There is no authority in this District for the proposition that the potential economic impact of a court's order constitutes good cause under Patent Local Rule 3-7. It is clear, however, that the economic impact of Magistrate Judge Laporte's decision in *LG Electronics* must have been substantial. It is equally clear under Ninth Circuit law that neither loss of a substantial award of attorney's fees nor a default judgment is sufficient to excuse a mistake regarding procedural rules. *See, e.g., Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir. 1994) (reversing a lower court's enlargement of time to file a motion for attorney's fees of $50,000 where the motion was filed late); *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) (affirming a refusal to enlarge time to file post-trial motion for attorney's fees); *Speiser,*

# CESARI AND MCKENNA, LLP

Hon. Phyllis J. Hamilton
November 13, 2003
Page 4

*Krause & Maddle P.C. v Ortiz*, 271 F.3d 884 (9th Cir. 2001) (affirming district court's entry of default judgment after defendant-attorney failed to timely file an answer).[1]

Secondly, JumpSport grossly exaggerates the alleged reduction in its potential damage award from Hedstrom if the Court adheres to its November 6th Order by unreasonably inflating its top damage figure. JumpSport's $2.3 million damage figure is wholly unrealistic and speculative[2], as it is based both upon lost profits to which JumpSport is simply not entitled in this case and on inflated royalty rates. Hedstrom's damages expert has responded to JumpSport's damages contention and will show that Hedstrom's maximum damages exposure is no more than about $378,000, even if all possible Hedstrom enclosure products are included. Contrary to JumpSport's assertion, it is of no import that Hedstrom's damages expert calculated a damages figure based upon the assumption that all Hedstrom enclosure products were included in the case. Hedstrom's expert was simply responding to JumpSport's expert's calculations based upon the same assumption.

Thirdly, contrary to JumpSport's contention, denial of its request for reconsideration will not result in a windfall to Hedstrom. In its letter brief, JumpSport contends, and cites case law supporting its contention that it will still be able to proceed against Hedstrom in a subsequent suit if it cannot add infringement allegations relating to Hedstrom's non-JumpGuard products in this case. Goldsmith, at pp. 4-5. If this is true, then a denial of JumpSport's request will neither lead to a windfall for Hedstrom nor prejudice JumpSport in any significant way. At most, it will simply postpone JumpSport's recovery of any further damages that it might be entitled to based upon a finding of infringement by the non-JumpGuard products. If JumpSport's patents are declared not infringed, invalid and/or unenforceable, there will be no need for a second action. If, on the other hand, JumpSport's patents are upheld, the major obstacle to settlement will be removed and it is likely that resolution will be reached by agreement. In either event, there will be no prejudice to JumpSport.

III. The Equities Of This Case Similarly Support The Court's Denial of JumpSport's Belated Attempt to Amend Its Final Infringement Contentions.

Hedstrom submits that if fairness is to be the determinative factor in regard to JumpSport's reconsideration request, then the equities for both parties should be balanced and that, on balance, those equities favor affirming the Court's earlier decision.

Hedstrom has relied on the Court's November 6, 2003 Order in its trial preparations, particularly those involving expert witnesses. It will be forced to expend considerable time and resources in additional trial preparations if the Order is now reversed half way through trial.

---

[1] JumpSport's reliance upon contract law and cases involving stipulations between parties that were decided in other districts to support its contentions is misplaced. That authority is easily distinguished, as this case presents no evidence of the mutual mistake discussed in those cases. Instead, it only concerns JumpSport's unilateral failure to follow the Local Patent Rules.

[2] The JumpSport damage figure that Mr. Goldsmith gave to the Court at the end of the trial day on November 7, 2003 was $1.6 million, and no explanation has been provided for the $700,000 discrepancy.

<div style="text-align:center">

## CESARI AND MCKENNA, LLP

</div>

Hon. Phyllis J. Hamilton
November 13, 2003
Page 5

    More importantly, as the Court knows, Hedstrom has lost its key witness, Mr. Fred Rieber, as a result of a very serious injury, which occurred on the eve of trial. Hedstrom will be able to present excerpts of Mr. Rieber's pre-trial deposition testimony to the jury videographically. However, Hedstrom will be severely prejudiced by being limited to this presentation. Mr. Rieber was primarily responsible for the design of Hedstrom's accused products. He was the person most knowledgeable concerning Hedstrom's involvement in this litigation, and the management person who directly interfaced with litigation counsel. He was also the primary member of management who interfaced with patent counsel, Mr. John McKenna, whenever Hedstrom evaluated competing products and whenever considered patenting product ideas. Through Mr. Rieber, thus, Hedstrom expected to tell the jury about Hedstrom's independent conception and design of its own enclosure products, why Hedstrom's products do not infringe certain claims of JumpSport's patents, Hedstrom's method of evaluating competing products, Hedstrom's "advice of counsel" defense, and several other important topics. Hedstrom has no other witness with the breadth of knowledge and specific knowledge possessed by Mr. Rieber. Reliance on Mr. Rieber's deposition testimony will not do justice to Hedstrom's case as those depositions were taken by JumpSport's lawyers with the purpose of eliciting testimony only on topics that would be favorable to JumpSport. Given Mr. Rieber's untimely accident, Hedstrom is at a severe disadvantage, one that is serious enough, in its view, to warrant a continuance of the trial until Mr. Rieber is physically able to appear live.

    Hedstrom is prepared to proceed with trial without Mr. Rieber as a live witness provided JumpSport's infringement contentions are limited to Hedstrom's JumpGuard products, as they have been from the outset of this case. Hedstrom submits that it would be grossly unfair under the circumstances to require it to proceed without Mr. Rieber as a live witness if JumpSport is allowed at this late stage to expand its infringement contentions to include non-JumpGuard products. If a continuance were to be granted, given Mr. Rieber's injuries, it would likely require a dismissal of the present jury and postponement of the trial until Mr. Rieber is available to appear on behalf of Hedstrom. A continuance, thus, would be most unfair to Jumpking and would truly reflect a waste of the Court's time and the time of the jurors who have endured over the last two weeks. Adherence to the Court's Order is clearly the preferable option.

    For all of the above reasons, Hedstrom believes that the law and the facts of this case clearly warrant the Court's denial of JumpSport's request for reconsideration.

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Thomas C. O'Konski*

Thomas C. O'Konski

</div>

cc: Peter H. Goldsmith, Esq.
    C.J. Veverka, Esq.

> **⚠ WARNING**
> Assembly, Installation, Care, Maintenance, and Use Instructions Read these materials prior to assembling and using this trampoline.

# Model No. 10450
# 14' JumpGuard™ Trampoline
## Assembly Instructions



> **⚠ WARNING**
> Recommended for ages 6 and up. This unit is for use by one person weighing less than 200 lbs.

P/N:    428-6356
DATE:   07-03-2001

**HEDSTROM®** *Corporation*

© 1998, 1999 Hedstrom® Corporation

EXHIBIT 1

HED 0583

# Model No. **11224**
## Trampoline Enclosure
## For 13' and 14' Round Trampolines
### Assembly Instructions



⚠ **WARNING**
Assembly, Installation, Care, Maintenance, and Use Instructions Read these materials prior to assembling and using this enclosure.

⚠ **WARNING**
Recommended for ages 6 and up. This unit is for use by one person weighing less than 200 lbs.

P/N: 428-6592
DATE: 12-11-2001



*Corporation*
© 2001, Hedstrom® Corporation



HED 0347