*Hedstrom Corp. v. JumpSport, Inc.*
Case No. 03 12308 PBS

# Exhibit J

## to Declaration of Daniel J. Kroll
## in Support Of Defendant JumpSport, Inc.'s Motion to Dismiss or Transfer

PETER H. GOLDSMITH (Bar No. 91294)
CHRISTINE A. AMATRUDA (Bar No. 111244)
LEGAL STRATEGIES GROUP
5905 Christie Avenue
Emeryville, California 94608-1925
Telephone: 510-450-9600
Facsimile: 510-450-9601

Attorneys for Plaintiff JumpSport, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUMPSPORT, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HEDSTROM CORPORATION, a Delaware corporation; KMART CORPORATION, a Michigan corporation; TARGET CORPORATION, a Minnesota corporation; TOYS "R" US-DELAWARE, INC., a Delaware corporation; and DOES 1 through 100,<br><br>Defendants. | Case No. C-04-0199 PJH<br><br>**FIRST AMENDED COMPLAINT FOR INFRINGEMENT OF PATENTS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JumpSport, Inc. complains against the above-named Defendants and alleges as follows:

### JURISDICTION AND VENUE

1. This action arises under 35 U.S.C. §§ 271 and 281, and 28 U.S.C. §§ 1331 and 1338. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because this is a civil action arising under the patent laws of the United States. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

### INTRA - DISTRICT ASSIGNMENT

2. Pursuant to Local Rule 3-2(c), this patent infringement action is subject to assignment on a district-wide basis.

3. This action is related to an action pending in this District, San Francisco Division, Civil Action No. C01-4986 PJH. This Court issued a Related Case Order on February 4, 2004, finding the two cases to be related as defined by Civil L.R. 3-12(b).

### PARTIES

4. Plaintiff JumpSport, Inc. (hereinafter "JumpSport") is a California corporation, with its principal place of business in Saratoga, California. At all times relevant herein, JumpSport was and is engaged in the business of designing, manufacturing and selling trampoline enclosures, trampolines, and related games and accessories, in California and the United States. JumpSport is the owner of the patents at issue in this case, as described below.

5. Defendant Hedstrom Corporation (hereinafter "Hedstrom") is a Delaware corporation with its principal place of business in Arlington Heights, Illinois. Hedstrom is engaged in the manufacture, sale and offering for sale of trampoline enclosures and trampolines. At certain relevant times for purposes of this Complaint, Hedstrom engaged in the infringement of, and/or induced the infringement of, and/or committed contributory infringement of, the JumpSport Patents (as defined in paragraph 16 below) throughout the United States, including in the Northern District of California.

6. Defendant KMart Corporation (hereinafter "KMart") is a Michigan corporation with its principal place of business in Troy, Michigan. KMart is engaged in the sale, and offering

First Amended Complaint For
Infringement of Patents

2

JumpSport, Inc. v. Hedstrom Corp. et al.
Case No. C 04-0199 RS

119990.1

1 | for sale, of trampoline enclosures and trampolines. At certain relevant times for purposes of this
2 | Complaint, KMart engaged in the infringement of, and/or induced the infringement of and/or
3 | committed contributory infringement of, the JumpSport Patents throughout the United States,
4 | including in the Northern District of California.

5     7.    Defendant Target Corporation (hereinafter "Target") is a Minnesota corporation
6 | with its principal place of business in Minneapolis, Minnesota. Target is engaged in the sale, and
7 | offering for sale, of trampoline enclosures and trampolines. At certain relevant times for purposes
8 | of this Complaint, Target engaged in the infringement of, and/or induced the infringement of,
9 | and/or committed contributory infringement of, the JumpSport Patents throughout the United
10 | States, including in the Northern District of California.

11     8.    Defendant Toys "R" Us-Delaware, Inc. (hereinafter "Toys "R" Us") is a Delaware
12 | corporation with its principal place of business in Wayne, New Jersey. Toys "R" Us is engaged in
13 | the sale, and offering for sale, of trampoline enclosures and trampolines. At certain relevant times
14 | for purposes of this Complaint, Toys "R" Us engaged in the infringement of, and/or induced the
15 | infringement of, and/or committed contributory infringement of, the JumpSport Patents throughout
16 | the United States, including in the Northern District of California.

17     9.    JumpSport is unaware of the true names and capacities of the Defendants named as
18 | "Does 1 through 100" herein, and therefore sues said Defendants by their fictitious names.
19 | JumpSport is informed and believes and on that basis alleges that each of the Doe Defendants is
20 | legally liable and responsible, directly or indirectly, for the matters alleged in the Complaint.
21 | JumpSport will seek leave to amend this Complaint to show the true names and capacities of the
22 | Doe Defendants when they become known.

23     10.    JumpSport is informed and believes, and on that basis alleges, that at all times
24 | mentioned in this Complaint each of the Defendants, including Does 1 - 100, was the agent or
25 | principal (or both) for one another, and was acting within the scope of such agency when engaging
26 | in the conduct alleged in this Complaint, and is jointly and severally liable for all damages and
27 | wrongful profits arising from the conduct described herein.
28

## FACTUAL ALLEGATIONS

11.  The popularity of backyard trampolines has sharply escalated over the past decade. The U.S. Consumer Product Safety Commission (hereinafter the "CPSC") has estimated that there was a 395% increase in the sales of backyard trampolines between 1989 and 2002. The popularity of backyard trampolines continued to rise as trampoline gymnastics was added as an event to the 2000 Summer Olympics. Industry sources estimate that between 650,000 and 700,000 trampolines are sold each year in the United States.

12.  At the same time trampoline sales soared, trampoline injuries dramatically increased. A September 2000 report from the CPSC found that from 1991 through 1999, the number of trampoline-related injuries tripled, reaching approximately 100,000 emergency room visits in 1999. The report found that the majority of injuries were sustained by children, and that many injuries were caused when the victims fell off the trampoline or fell on the trampoline springs or frame.

13.  Mark Publicover (hereinafter "Publicover"), who co-founded JumpSport with his wife, Valerie, is a lifelong inventor and the father of three children. The idea for a trampoline safety enclosure first occurred to Publicover after seeing his own children using (and sometimes falling off) the family's backyard trampoline. Publicover discovered that he could not purchase a safety net for the trampoline from any major trampoline manufacturer or sporting equipment retailer. Publicover's interest in obtaining a trampoline safety enclosure, and his surprise that none were readily available for purchase, turned into the resolve to develop his enclosure invention in 1995 after the child of one of his closest friends fell off the Publicovers' trampoline and was hurt with what appeared to be a serious injury. Publicover was convinced that many parents would share his desire for safer trampolines for both children and adults, and he set out to develop his invention into a safe and affordable product.

14.  Publicover began working on his invention and in 1996 he began building prototypes. Publicover invented a trampoline enclosure that includes a safety fence that extends above the rebounding surface to reduce the risk of injury. The invention is described in detail in the claims of the JumpSport Patents.

First Amended Complaint For
Infringement of Patents

119990.1

4

JumpSport, Inc. v. Hedstrom Corp. et al.
Case No.C 04-0199 RS

15. On June 19, 1998, Publicover and his co-inventors filed a patent application, and on April 25, 2000, U.S. Patent No. 6,053,845 (hereinafter the "'845 Patent") was issued. On November 2, 1999, Publicover and his co-inventors filed a continuation application, and on July 17, 2001, U.S. Patent No. 6,261,207 (hereinafter the "'207 Patent") was issued. (The '845 Patent and the '207 Patent shall be referred to collectively herein as "the JumpSport Patents.") True and correct copies of the JumpSport Patents are attached hereto as Exhibits A and B.

16. On September 30, 1998, Publicover and his co-inventors assigned to JumpSport LLC all right, title and interest to the trampoline enclosure invention, the patent application (including all divisions and continuations thereof), and to all patent rights relating to the invention throughout the world. On July 1, 1999, JumpSport LLC merged into JumpSport, Inc., and JumpSport, Inc. became the owner of the JumpSport Patents.

17. Publicover and his wife, Valerie Publicover, founded JumpSport in February of 1997 to create and market trampoline safety enclosures and related products. In late 1997 and early 1998, JumpSport began marketing its trampoline safety enclosures under the trade names JumpCourt™ and TrampolineCourt™. The JumpCourt™ trampoline safety enclosure was voted one of the top five "Sporting Good Products of the Year" in 1998.

18. When JumpSport first introduced the JumpCourt™ trampoline safety enclosure in 1998, there were virtually no stores selling safety enclosures for backyard trampolines. By the year 2001, there were an estimated 7,000 retail outlets selling trampoline enclosures in the United States alone.

19. After JumpSport began marketing its unique JumpCourt™ trampoline safety enclosure, Defendant Hedstrom began manufacturing and selling trampoline enclosures that included the essential features of the JumpCourt™ trampoline enclosure. Hedstrom continued to make, use, sell and offer for sale these enclosures after the issuance of the JumpSport Patents. The enclosures manufactured, sold and offered for sale by Hedstrom all infringed the JumpSport Patents, and Hedstrom has continued to manufacture, sell, and offer for sale infringing products.

20. Defendants KMart, Target, Toys "R" Us, and the Doe Defendants have in the past sold and offered for sale, and continue to sell and offer for sale, the infringing trampoline

First Amended Complaint For
Infringement of Patents

119990.1

5

JumpSport, Inc. v. Hedstrom Corp. et al.
Case No.C 04-0199 RS

1 enclosures manufactured by Defendant Hedstrom.

2     21. On December 19, 2001, Plaintiff JumpSport filed an action in the United States District Court for the Northern District of California against Hedstrom, KMart, and other defendants for patent infringement. That action is captioned *JumpSport, Inc. v. Jumpking, Inc., et al.*, Civil Action No. C 01-4986 PJH ("the First Infringement Action"). That action was limited, as to Hedstrom and its retailers, to the manufacture and sale of one model of Hedstrom enclosures, the unitized JumpGuard unit. Since the JumpGuard unit possesses essentially the same features as other Hedstrom trampoline enclosure products, the service of the First Infringement Action put Hedstrom, and KMart on actual notice of JumpSport's assertions that those Defendants have infringed the JumpSport Patents by manufacturing, selling and/or offering for sale trampoline enclosure products manufactured by Hedstrom.

    22. JumpSport notified Defendant Target, in writing, of the issuance of the JumpSport Patents on October 26, 2000 (the '845 Patent) and August 20, 2001 (the '207 Patent). On or about May 20, 2003, JumpSport notified Target, in writing, of JumpSport's assertions that Target was infringing the JumpSport Patents by selling Hedstrom trampoline enclosure products.

    23. On or about December 5, 2003, in the First Infringement Action, the jury returned a verdict against Hedstrom, finding that Hedstrom's JumpGuard unitized product infringed claims 1, 2, 7, 15 and 17 of the '845 Patent and claims 9 and 10 of the '207 Patent.

    24. In addition to the JumpGuard product, Hedstrom has manufactured, used, sold and offered for sale, and the Defendant retailers have used, sold and offered for sale, other unitized trampoline and enclosure products, as well as separate trampoline enclosure products designed to be assembled on a trampoline, that "read on" or contain all of the elements of numerous claims of the JumpSport Patents. Hedstrom and KMart are collaterally estopped, in whole or in part, from asserting or demonstrating that such products do not read on the claims of the JumpSport Patents, and from asserting or demonstrating that they have not infringed and/or induced infringement of the JumpSport Patents through their manufacture, use, sale and/or offer for sale of such products.

    25. With respect to the non-unitized trampoline enclosure products, such products are, if not infringing products themselves, a material part of the invention claimed in the JumpSport

1  Patents, and Hedstrom and the retailer Defendants have sold and offered to sell such products
2  knowing that they are especially made or especially adapted for use in an infringement of the
3  JumpSport Patents, and are not staple articles or commodities suitable for substantial
4  noninfringing use. Hedstrom has actively induced the retailer Defendants, and Hedstrom and the
5  retailer Defendants have actively induced consumers and other third parties, to infringe the
6  JumpSport Patents by assembling such products on a trampoline and by using, selling and/or
7  offering for sale such infringing assemblies or material parts of such infringing assemblies.

8      26.    Defendants willfully infringed or induced infringement of the JumpSport Patents by
9  knowingly and deliberately designing, manufacturing, using, selling and offering for sale
10 infringing unitized trampoline and enclosure products, and separate trampoline enclosure products
11 designed to be assembled with a trampoline, along with actively encouraging and assisting other
12 parties (including consumers) to sell and/or use the trampoline and enclosure products in an
13 infringing manner, with full knowledge of the pendency and issuance of the JumpSport Patents.
14 Defendants continued to willfully infringe and induce infringement of the JumpSport Patents
15 through several selling seasons, with full knowledge of the JumpSport Patents. Moreover,
16 Defendants have continued to manufacture, use, sell and offer for sale infringing products, or
17 material components of infringing devices not suitable for substantial non-infringing use, knowing
18 that they are especially made or especially adapted for use in an infringement of the JumpSport
19 Patents, after and despite the jury's verdict in the First Infringement Action, which found that a
20 Hedstrom enclosure with essentially the same features infringed the JumpSport Patents.

21                          **PATENT INFRINGEMENT, 35 U.S.C. § 271**
22                                  (Against all Defendants)

23     27.    Paragraphs 1 through 26 are hereby incorporated by reference as though completely
24 set forth herein.

25     28.    On April 25, 2000 and July 17, 2001, the JumpSport Patents were duly and legally
26 issued to JumpSport as assignee for an invention involving trampoline or the like with enclosure,
27 and since those dates JumpSport has been and still is the owner of said patents.

28     29.    Defendant Hedstrom has willfully infringed (including willfully inducing

infringement and willfully committing contributory infringement), both literally and under the doctrine of equivalents, and continues willfully to so infringe. the JumpSport Patents, through the conduct alleged above. Hedstrom will continue to willfully infringe the JumpSport Patents unless enjoined by the Court. Such conduct includes, without limitation, the manufacture, use, sale and offer for sale of unitized trampoline and enclosure products, as well as separate trampoline enclosure products designed to be assembled on a trampoline, that embody the patented inventions claimed in numerous claims of the JumpSport Patents, in violation of 35 U.S.C. § 271(a). Such conduct also includes Hedstrom's active inducement of infringement, in violation of 35 U.S.C. § 271(b), of the JumpSport Patents by the retailer Defendants and by other persons or entities, including consumers, by, among other things, manufacturing, using, offering for sale and selling trampoline enclosure products embodying the claimed inventions of the JumpSport Patents, and enclosure products which are a material part of the claimed inventions of the JumpSport Patents, with knowledge and intention that such products would be resold to the public and/or used by the public in a manner that infringes the JumpSport Patents, and with encouragement that they be so resold and/or used. Such conduct also includes offering for sale and selling trampoline enclosures which constitute a material component of the claimed JumpSport inventions, knowing that they are especially made or especially adapted for use in an infringement of the JumpSport Patents, and not staple articles or commodities suitable for substantial noninfringing use, in violation of 35 U.S.C. § 271(c).

30. Defendants KMart, Target, Toys "R" Us and Does 1 through 100 have willfully infringed, and continue willfully to infringe, the JumpSport Patents, and will continue to willfully infringe the JumpSport Patents unless enjoined by this Court, through the conduct alleged above. Such conduct includes, without limitation, selling and offering for sale trampoline enclosure products embodying the claimed inventions of the JumpSport Patents, literally and under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a). Such conduct also includes active inducement of infringement, in violation of 35 U.S.C. § 271(b), of the JumpSport Patents by consumers and other third parties, by, among other things, using, offering for sale and selling trampoline enclosure products embodying the claimed inventions of the JumpSport Patents, and

119990 1

First Amended Complaint For
Infringement of Patents                          8

JumpSport, Inc. v. Hedstrom Corp. et al.
Case No.C 04-0199 RS

enclosure products which are a material part of the claimed inventions of the JumpSport Patents, with knowledge and intention that such products would be assembled with trampolines and used by the public in a manner that infringes the JumpSport Patents, and with encouragement that they be so assembled and used. Such conduct also includes offering for sale and selling trampoline enclosures which constitute a material component of the claimed JumpSport inventions, knowing that they are especially made or especially adapted for use in an infringement of the JumpSport Patents, and not staple articles or commodities suitable for substantial noninfringing use, in violation of 35 U.S.C. § 271(c).

31. Defendants have been on notice of the existence of the JumpSport Patents, and JumpSport's ownership thereof, since their issuance. Moreover, Defendants Hedstrom and KMart have been on notice of JumpSport's infringement claims against each of them at least since the filing of the First Infringement Action on December 19, 2001. JumpSport notified Defendant Target in writing, on May 20, 2003, that it was and is selling enclosures that infringe the JumpSport Patents. Nevertheless, Defendants have, and continue to, directly infringe and/or induce infringement and/or commit contributory infringement of the JumpSport Patents, literally and under the doctrine of equivalents, through the conduct alleged above.

32. Defendants' infringement, inducement of infringement, and contributory infringement of the JumpSport Patents has been deliberate and willful.

33. As a result of the infringing activities of Defendants, Plaintiff JumpSport has been and will be damaged. Consequently, JumpSport is entitled to compensation for those damages pursuant to 35 U.S.C. § 284 in an amount that cannot presently be quantified, but which will be ascertained at trial. JumpSport is also entitled to an order preliminarily and permanently enjoining Defendants and their employees, agents and representatives from engaging in the infringing activities.

34. This case presents exceptional circumstances warranting an award of treble damages and attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JumpSport prays for relief as follows:

First Amended Complaint For Infringement of Patents    9    JumpSport, Inc. v. Hedstrom Corp. et al. Case No.C 04-0199 RS

119990.1

1.  For a judgment that the JumpSport Patents are valid and infringed by Defendants;

2.  That preliminary and permanent injunctions issue against continued infringement of the JumpSport Patents by Defendants and their parents, subsidiaries, officers, directors, employees, affiliates, representatives and agents, and all those acting in concert with or through them, directly or indirectly;

3.  That JumpSport be awarded compensatory damages, in an amount to be determined at trial;

4.  For an award of treble damages because of the willful nature of the infringement; an assessment of interest and costs, including prejudgment interest; and an award of attorneys' fees due to the exceptional circumstances of this case, against Defendants; and

5.  Such other further relief as the Court shall deem just and proper.

DATED: February 20, 2004            LEGAL STRATEGIES GROUP


                                    By /s/ PETER H. GOLDSMITH
                                       PETER H. GOLDSMITH
                                       Attorneys for Plaintiff
                                       JUMPSPORT, INC.

119990.1

First Amended Complaint For
Infringement of Patents                10                JumpSport, Inc. v. Hedstrom Corp. et al.
                                                         Case No. C 04-0199 RS

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

DATED: February 20, 2004          LEGAL STRATEGIES GROUP


By /s/ PETER H. GOLDSMITH
PETER H. GOLDSMITH
Attorneys for Plaintiff
JUMPSPORT, INC.

First Amended Complaint For
Infringement of Patents                11                JumpSport, Inc. v. Hedstrom Corp, et al.
Case No. C 04-0199 RS

119990.1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to General Order No. 48, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of the proceeding:

Mark Publicover, Valerie Publicover, Byron Bertsch, Herb Taus, and Steven Moulton collectively own the majority of the stock of plaintiff JumpSport, Inc. and/or serve as officers and/or directors of plaintiff JumpSport, Inc.

DATED: February 20, 2004        LEGAL STRATEGIES GROUP


By /s/ PETER H. GOLDSMITH
PETER H. GOLDSMITH
Attorneys for Plaintiff
JUMPSPORT, INC.

First Amended Complaint For Infringement of Patents — 12 — JumpSport, Inc. v. Hedstrom Corp. et al. Case No.C 04-0199 RS

119990.1