IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
------------------------------------ x
HEDSTROM CORPORATION,                )
                                     )
                Plaintiff            )
                                     )   Docket No: 03 12308 PBS
          - v -                      )
                                     )
JUMPSPORT, INC.,                     )
                                     )
                Defendant.           )
------------------------------------ x
```

DECLARATION OF MARK W. PUBLICOVER IN SUPPORT
OF DEFENDANT JUMPSPORT INC.'S MOTION TO DISMISS OR TRANSFER

I, Mark W. Publicover, declare:

1.  I am President of JumpSport, Inc. ("JumpSport"), Defendant in this action. I make this declaration in support of Defendant JumpSport, Inc.'s Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1), 12(b)(2), 12(b)(3), 28 U.S.C. § 1406(a) and 28 U.S.C. § 2201, Or To Transfer Venue Pursuant to 28 U.S.C. § 1404(a). The facts stated in this Declaration are true and correct of my own personal knowledge, and if called as a witness I could and would competently testify thereto.

2.  JumpSport is a California corporation, incorporated in California in 1999. (JumpSport's predecessor, JumpSport LLC, a California limited liability corporation, was incorporated in February 1997.) JumpSport's principal place of business has been Saratoga, California, from its inception to the present. I reside in Saratoga, California, and all of the other officers, directors and employees of JumpSport reside in Northern California, with the exception of one, Steve Moulton, who resides in St. Louis, Missouri.

3. Except for the local counsel it was required to hire in connection with this action, JumpSport has no offices, employees, bank accounts, assets, property, agents or counsel in Massachusetts.

4. At all times relevant to this lawsuit, JumpSport was and is engaged in the business of designing, manufacturing and selling trampoline enclosures, trampolines, and related games and accessories, in California and the United States. JumpSport is the owner, by assignment, of the patents at issue in this lawsuit, as described below.

5. I co-founded JumpSport with my wife, Valerie. The idea for a trampoline safety enclosure first occurred to me after seeing our children using (and sometimes falling off) the family's backyard trampoline. I discovered that I could not purchase a safety net for the trampoline from any trampoline manufacturer or sporting equipment retailer, so I decided to design one, and to develop it into a safe and affordable product.

6. I began working on that invention in 1996, and, over the next approximately two years, engaged the help of several other co-inventors, including Jon Greiner, Byron Bertsch and Scott Publicover. All of those individuals, except for my brother Scott Publicover, who resides in Idaho, currently reside in Northern California. With their help, we developed various designs for trampoline enclosures that include a safety fence that extends above the rebounding surface to reduce the risk of injury. The fence includes poles whose tops are linked by a resilient member.

7. On June 19, 1998, I and my co-inventors filed U.S. Patent Application No. 09/100,586. The patent application was granted, and on April 25, 2000, U.S. Patent No. 6,053,845 (the "'845 Patent") was issued. On November 2, 1999, I and my co-inventors filed a continuation application. That patent application was granted, and on July 17, 2001, U.S. Patent

No. 6,261,207 (the "'207 Patent") was issued. I will refer to both patents collectively as "the JumpSport Patents."

8. On September 30, 1998, I and my co-inventors assigned to JumpSport LLC (a California limited liability corporation) all right, title and interest to the trampoline enclosure invention and to the patent rights stemming from both applications and subsequently issued patents. On July 1, 1999, JumpSport LLC merged into JumpSport, Inc., also a California corporation, and JumpSport, Inc. became the owner of the JumpSport Patents.

9. In late 1997 and early 1998, JumpSport began marketing its trampoline safety enclosures under the trade name JumpCourt™. In that period, I had some meetings and discussions with Hedstrom Corporation, a Pennsylvania manufacturer of children's playground equipment, toys and other products, about manufacturing the safety enclosures for JumpSport. All of those meetings and discussions took place in Northern California and in Pennsylvania, where Hedstrom's manufacturing facilities and corporate offices were located. As the result of those discussions, in 1997 and 1998, JumpSport had a business relationship with Hedstrom whereby Hedstrom manufactured JumpCourt™ trampoline enclosures for JumpSport, and JumpSport paid Hedstrom per manufactured product. The parties' business dealings during that period took place in Northern California and Pennsylvania, where Hedstrom was located at that time. At no time in that period, or afterwards, did I or JumpSport have any meetings or conversations, or exchange correspondence, with anyone from Hedstrom who was located in Massachusetts. As far as I am aware, Hedstrom does not have any corporate office or employees in Massachusetts.

10. Hedstrom's complaint in the present lawsuit alleges that it is a Delaware corporation with its principal place of business in Mount Prospect, Illinois.

11.     After JumpSport's business relationship with Hedstrom terminated in 1998, Hedstrom began manufacturing and marketing trampoline enclosures under its own name, in competition with JumpSport's products. JumpSport believes that, by manufacturing and selling such trampoline enclosures, Hedstrom is infringing the JumpSport Patents. Hedstrom currently manufactures, sells, and offers for sale trampoline enclosures and trampolines. I am informed and believe that Hedstrom has relationships with several large, national retailers, including Toys 'R Us, Kmart and Target Corporation, which sell Hedstrom trampoline enclosures to the public throughout the nation.

12.     JumpSport does not have any employees, distributors or selling agents in Massachusetts. JumpSport does, however, sell trampoline-related products to a national retailer centered in Natick, Massachusetts -- BJ's Wholesale -- which in turn re-sells such products to the public (at a mark-up, for its own profit) in various wholesale/retail outlet stores throughout the east coast, including southern states such as Florida and Georgia. In selling such products to BJ's, JumpSport does not actually ship such products into the Commonwealth of Massachusetts. Instead, BJ's arranges to have independent shipping/trucking companies pick up the trampoline-related products from JumpSport's warehouse in Norfolk, Virginia, and transport them to BJ's distribution centers. BJ's pays all shipping charges, transporting such products "Freight On Board" (F.O.B.) to its distribution centers. I am informed and believe that BJ's has three distribution centers from which it supplies products to its various stores throughout the eastern seaboard, located in New Jersey (the largest distribution center), Florida, and Massachusetts.

13.     BJ's is the only retailer or other reseller to which JumpSport sells its trampoline-related products in Massachusetts. JumpSport does business with approximately 100 independent dealers who resell trampoline-related products to the general public, but none of such dealers is

located in Massachusetts. JumpSport does, however, maintain an "800" number and a website, from which the public may purchase products directly from JumpSport. I would estimate that only approximately 1% of JumpSport's annual sales are made to residents of Massachusetts through the "800" number or internet.

14.   On December 19, 2001, JumpSport filed a patent infringement lawsuit in the United States District Court for the Northern District of California against Hedstrom, KMart, and other defendants. That action is captioned *JumpSport, Inc. v. Jumpking, Inc., et al.*, Civil Action No. C 01-4986 PJH ("the First Infringement Action"). The action alleges that Hedstrom and other trampoline enclosure manufacturers and retailers are infringing the JumpSport Patents by manufacturing, selling and offering to sell infringing trampoline enclosure products that embodied JumpSport's patented invention. That action went to trial on November 3, 2003, and a jury rendered a verdict on December 5, 2003, finding Hedstrom guilty of infringing certain claims of both JumpSport Patents by manufacturing and selling its "JumpGuard" trampoline with enclosure units.

15.   The witnesses from JumpSport who testified in the trial, and their places of residence, included myself (Saratoga, California) and Steve Moulton (our corporate counsel, who resides in St. Louis, Missouri). JumpSport also engaged expert witnesses John Hansen, who works for a consulting company in California, and Steven Velinsky (California). Hedstrom retained two experts who reside in Massachusetts, Philip Green (not called at trial) and Stephen McCarthy. Hedstrom and the other defendants also called certain witnesses to testify about alleged "prior art" trampoline enclosures that existed at the time of the applications for the JumpSport Patents. Those witnesses, and their places of residence (which I learned from their trial testimony, which I personally witnessed, as well as personal dealings in certain cases)

5

included William H. Curtis (Utah), and Philip Aja (Utah). Certain Hedstrom employees testified at trial, either live or through depositions, including Annalee Restly (Bedford, Pennsylvania), Fred Rieber (Bedford, Pennsylvania), and Gary Stoffer (Pennsylvania).

16. Hedstrom's witness list in the case included some further witnesses it did not call, including Pat Dumpert, John Dellos, Cheryl Sullivan, and Nancy Harclerode. I am informed and believe that each of those individuals resides in Pennsylvania. I am not aware of any percipient witness with knowledge relating to the parties' dispute who resides in Massachusetts.

17. It would be extremely disruptive to JumpSport's business for me, or any of the other JumpSport employees, to have to travel across the country to participate in a trial or other legal proceedings in Massachusetts. JumpSport is a relatively small company, with only nine employees, and with gross revenues (last year) of approximately $5 million. JumpSport is struggling to be profitable. Being subject to a lawsuit in Massachusetts, and having to engage local counsel in Massachusetts and participate in legal proceedings in that distant locale, would jeopardize JumpSport's profitability and would seriously inconvenience my family and JumpSport personnel.

I declare under penalty of perjury under the laws of the State of Massachusetts and the United States of America that the foregoing is true and correct and that this declaration was executed on the 26th day of February, 2004, in Saratoga, California.

/s/ Mark W. Publicover
Mark W. Publicover