IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HEDSTROM CORPORATION,                    )
                                         )
                    Plaintiff,           )
                                         )    Docket No: 03 12308 PBS
            - v -                        )
                                         )
JUMPSPORT, INC.,                         )
                                         )
                    Defendant.           )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW AND REASONS IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PURSUANT TO F.R.C.P. 12(b)(1), 12(b)(2), 12(b)(3) AND 28 U.S.C. § 2201, OR TO
<u>TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)</u>

Gregg Shapiro (BBO #642069)
CHOATE HALL & STEWART
Exchange Place
Boston, MA 02109-2891
(617) 248-5000

Of Counsel
LEGAL STRATEGIES GROUP
Peter H. Goldsmith
Christine Amatruda
5905 Christie Ave.
Emeryville, CA 94608
(510) 450-9600

Attorneys for Defendant JumpSport, Inc.

February 26, 2004

**TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ...........................................................................................1

        A.      JumpSport's First Infringement Action In Northern California ........................2

        B.      The First Infringement Action's Limitation To One Type Of Hedstrom Unit...3

        C.      The Parties' New Patent Lawsuits Regarding Other Hedstrom Enclosures ......4

        D.      The California Court's Intimate Familiarity With The Patents And Disputes ..5

        E.      Location Of Parties, Witnesses, Documents And Events ..................................6

III.    ARGUMENT ...............................................................................................6

        A.      Because This Action Misuses The Declaratory Judgment Act, This Court
                Should Decline Jurisdiction And Dismiss This Action .....................................6

        B.      This Court Lacks Jurisdiction Over Defendant JumpSport ..............................9

                1.      There Is No Jurisdiction Under the Massachusetts Long-Arm Statute......9

                2.      Personal Jurisdiction Does Not Comport With Due Process.................14

        C.      Venue Is Not Proper In This Court..................................................................14

        D.      Even If Venue In This Court Were Proper, The Case Should Be Transferred
                To The District Court For The Northern District Of California Under 28
                U.S.C. § 1404(a).................................................................    16

IV.     CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*909 Corp. v. Bolingbrook Police Pension Fund,*
741 F. Supp. 1290 (S.D. Tex. 1990) ........................................................................................8

*Abbott Laboratories v. Gardner,*
387 U.S. 136 (1967).................................................................................................................7

*Akro Corp. v. Luker,*
45 F.3d 1541 (Fed. Cir. 1995)................................................................................................13

*Allied-General Nuclear Services v. Commonwealth Edison Co.,*
675 F.2d 610 (4th Cir. 1982) ...................................................................................................8

*Amerada Petroleum Corp. v. Marshall,*
381 F.2d 661 (5th Cir. 1967) ...................................................................................................9

*Boston Scientific Corp. v. Bonzel,*
132 F. Supp. 2d 45 (D. Mass. 2001) ......................................................................9, 10, 14, 19

*Brant Point Corp. v. Poetzsch,*
671 F. Supp. 2 (D. Mass. 1987) .......................................................................................16, 20

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)..........................................................................................................12, 14

*Codex v. Milgo Electronic Corp.,*
553 F.2d 735 (1st Cir. 1977)..............................................................................................9, 16

*DeNovellis v. Shalala,*
124 F.3d 298 (1st Cir. 1997)....................................................................................................7

*Der-Tex Corp. v. Thatcher,*
815 F. Supp. 41 (D. Mass. 1993) ...........................................................................................13

*Foster-Miller, Inc. v. Babcock & Wilcox Canada,*
46 F.3d 138 (1st Cir. 1995).......................................................................................................9

*Gesco International Inc. v. Luther Medical Products Inc.,*
17 U.S.P.Q. 2d 1168 (W.D. Tex. 1990)........................................................11, 12, 14, 15, 18

*Goodman v. Schmalz,*
80 F.R.D. 296 (E.D.N.Y. 1978) .............................................................................................16

*Graphic Controls Corp. v. Utah Medical Products Inc.*,
149 F.3d 1382 (Fed. Cir. 1998)................................................................12, 13

*Green v. Mansour*,
474 U.S. 64 (1985)......................................................................................7

*Gribin v. Hammer Galleries*,
793 F. Supp. 233 (C.D. Cal. 1992) ..............................................................8

*Hanes Corp. v. Millard*,
531 F.2d 585 (D.C. Cir. 1976)..................................................................7, 8

*Hollyanne Corp. v. TFT, Inc.*,
199 F.3d 1304 (Fed. Cir. 1999)..................................................................14

*Hotel Constructors, Inc. v. Seagrave Corp.*,
543 F. Supp. 1048 (N.D. Ill. 1982) ..................................................16, 17, 18

*KVH Industrial, Inc. v. Moore*,
789 F. Supp. 69 (D.R.I. 1992)................................................................12, 14

*Kleinerman v. Luxtron Corp.*,
107 F. Supp. 2d 122 (D. Mass. 1998) ........................................................9, 16

*Lexington Insurance Co. v. City of Phoenix*,
1996 U.S. Dist. LEXIS 11694 (D. Mass. July 31, 1996)..............................7, 8, 9

*Lyle Richards International, Ltd. v. Ashworth, Inc.*,
132 F.3d 111 (1st Cir. 1997)......................................................................11

*Marino v. Hyatt Corp.*,
793 F.2d 427 (1st Cir. 1986)......................................................................10

*Mercier v. Sheraton International, Inc.*,
981 F.2d 1345 (1st Cir. 1992)....................................................................20

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)........................................................................14

*Nova Biomedical Corp. v. Moller*,
629 F.2d 190 (1st Cir. 1980)......................................................................13

*Perez v. Ledesma*,
401 U.S. 82 (1971)....................................................................................8

iii

*Princess House, Inc. v. Lindsey,*
136 F.R.D. 16 (D. Mass. 1991)................................................................................................16

*Promuto v. Waste Management, Inc.,*
44 F. Supp. 2d 628 (S.D.N.Y. 1999).........................................................................................18

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998)................................................................................................13

*Republic of Bolivia v. Philip Morris Cos., Inc.,*
39 F. Supp. 2d 1008 (S.D.Tex. 1999) ......................................................................................18

*Ryobi America Corp. v. Peters,*
815 F. Supp. 172 (D.S.C. 1993)........................................................................................12, 14

*Singer, PPA v. Piaggio & C. (s.p.a.),*
420 F.2d 679 (1st Cir. 1970)............................................................................................10, 11

*Sterilite Corp. v. Spectrum International, Inc.,*
43 U.S.P.Q. 2d 1198, 1997 U.S. Dist. LEXIS 11151 (D. Mass. 1997) .......................10, 11, 13

*Sturm, Ruger & Co., Inc. v. Occupational Safety and Health Admin.,*
186 F.3d 63 (1st Cir. 1999)........................................................................................................7

*Subaru of New England, Inc. v. Lakes Subaru, Ltd.,*
1999 U.S. Dist. LEXIS 22856 (Apr. 26, 1999)......................................................................8, 9

*Subaru of New England, Inc. v. Subaru of Augusta, Inc.,*
121 F.R.D. 1 (D. Mass. 1988)....................................................................................................7

*U.S. Aluminum Corp.  v. Kawneer Co., Inc.,*
694 F.2d 193 (9th Cir. 1982) ..................................................................................................14

*Van Dusen v. Barrack,*
376 U.S. 612 (1964)..........................................................................................................16, 18

*Wilton v. Seven Falls Co.,*
515 U.S. 277 (1995)...................................................................................................................7

## STATE CASES

*New Hampshire Insurance Guaranty Association v. Markem Corp.,*
424 Mass. 344 (1997) ......................................................................................................10, 11

*Tatro v. Manor Care, Inc.,*
416 Mass. 763 (1994) ..............................................................................................................10

## FEDERAL STATUTES & RULES

28 U.S.C. § 1391 ................................................................................................2, 14

28 U.S.C. § 1404(a) ................................................................... 2, 7, 15, 16, 20

28 U.S.C. § 1406(a) .......................................................................................15

28 U.S.C. § 2201 ............................................................................................ 6

35 U.S.C. §§ 102 and 103 .................................................................................5

35 U.S.C. § 256................................................................................................6

Fed. R. Civ. P. 12(b)(2)...........................................................................9, 13, 20

Fed. R. Civ. P. 12(b)(3)..................................................................................20

N.D. Cal. Civil L.R. 3-12(b) ...........................................................................8

## STATE AUTHORITIES

G.L. 223A, § 3A ......................................................................................9, 13

N.Y. Civ. Prac. § 302(a)(1)..............................................................................12

## MISCELLANEOUS AUTHORITIES

15 Wright, Miller & Cooper, Federal Practice and Procedure, § 3848 at 389-92 (1986)........16

## I.    INTRODUCTION

Plaintiff Hedstrom Corporation filed this declaratory relief lawsuit against Defendant JumpSport, Inc. in November 2003, during the pendency of a trial in the United States District Court for Northern District of California involving virtually the same matters of fact and law at issue in this lawsuit.   In that earlier lawsuit, JumpSport had sued Hedstrom (and two other manufacturers) and certain of their retailers for patent infringement arising from their manufacture and sale of trampoline enclosures covered by two JumpSport patents.  At the outset of the trial, the Court ruled that JumpSport had only put at issue certain Hedstrom products called "JumpGuard." The units *not* at issue in that lawsuit -- which are the subject of Hedstrom's current lawsuit (the "Other Hedstrom Enclosures") -- are virtually the same as the JumpGuard products, except that the JumpGuard products include a trampoline *and* enclosure, and the Other Hedstrom Enclosures are just the enclosure.  The jury found that Hedstrom was guilty of infringement, and various post-trial motions are pending.

During the trial in the California action, and within one week of the Court's ruling that JumpSport's claims in that action were limited to the "JumpGuard" product, Hedstrom filed the present lawsuit in Massachusetts, where its trial counsel is located but which *bears no other connection* to the issues in this case or in the First Infringement Action.  After the trial, and before being served with Hedstrom's complaint, JumpSport filed an infringement action in Northern California relating to the Other Hedstrom Enclosures (the "Second Infringement Action"), and that case was ruled related to the First Infringement Action, and is now pending before Judge Phyllis Hamilton, who handled that lawsuit from its inception through trial.

This motion seeks the dismissal, or, in the alternative, the transfer, of this case for a number of independent reasons.  First, a declaratory judgment action is *not* a tool for beating opponents in a race to the courthouse.   The Court should exercise its discretion to decline jurisdiction and dismiss a lawsuit -- even when it was first-filed -- which is an anticipatory suit, or an attempt to forum shop.  Because this action is both of these things, JumpSport requests that this Court decline jurisdiction and dismiss this action in deference to JumpSport's Second Infringement Action pending against Hedstrom and other defendants in Northern California.

Second, because JumpSport is a California corporation with its principal place of business

in California, does not have "continuous and systematic" contacts with Massachusetts, and did not perform any conduct that is the subject of this lawsuit in Massachusetts, this Court lacks personal jurisdiction over it.  Moreover, Hedstrom is not even a resident of Massachusetts, and apparently filed this action there for the sole reason that its preferred counsel is located there.  The action should thus be dismissed pursuant to Federal Rule 12(b)(2).

Third, the action should also be dismissed because venue in Massachusetts is not proper. Under the applicable venue statute, 28 U.S.C. § 1391, venue in Massachusetts is proper only if JumpSport is subject to personal jurisdiction there, or if Massachusetts is a district where a "substantial part of the events or omissions giving rise to the claim occurred."  Neither of those conditions is satisfied in the present case.

And finally, even if personal jurisdiction or venue were proper in this judicial district, all of the applicable convenience factors dictate in favor of transferring this lawsuit to the Northern District of California, where venue is proper and where most of the relevant documents and important witnesses are located, and where the parties have litigated a substantially identical infringement suit relating to Hedstrom's "JumpGuard" trampoline enclosures for the last two years. Indeed, JumpSport's Second Infringement Lawsuit in Northern California has been reassigned to the judge who presided over the First Infringement Action, and includes all of the appropriate retailer defendants, and that would resolve all of the issues raised in the present suit.  Thus, the Court should transfer the lawsuit to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

## II.    BACKGROUND

### A.    JumpSport's First Infringement Action In Northern California.

On December 19, 2001, JumpSport filed a patent infringement lawsuit in the United States District Court for the Northern District of California against Hedstrom, KMart, and other defendants.  That action is captioned *JumpSport, Inc. v. Jumpking, Inc., et al.*, Civil Action No. C 01-4986 PJH ("the First Infringement Action").  The action charges those defendants with infringing JumpSport's two patents issued in April 2000 and July 2001, U.S. Patent No. 6,053,845 ("the '845 Patent") and U.S. Patent No. 6,261,207 ("the '207 Patent") (collectively the "JumpSport Patents"), which apply to safety enclosure systems assembled on trampolines to guard against

2

injuries from trampoline fall-offs. *See* Second Amended Complaint ("SAC"), ¶¶ 19-20, and Exhs. A & B thereto, Kroll Decl., Exh. B. The action alleges that Hedstrom and other trampoline enclosure manufacturers and retailers are infringing the JumpSport Patents by manufacturing, selling and offering to sell infringing trampoline enclosures that embodied the patented invention originated by JumpSport. SAC, ¶¶ 37-38.

### B.    The First Infringement Action's Limitation To One Type Of Hedstrom Unit.

With respect to Hedstrom and the retailer defendants who have sold Hedstrom products, the infringement claims were limited to one model of Hedstrom trampoline enclosures, the unitized "JumpGuard" unit. Although the complaint in the lawsuit does not specify the allegedly infringing Hedstrom products by name, in pretrial infringement contentions JumpSport specified that the Hedstrom "JumpGuard" product, which is a particular model of trampoline and enclosure sold together as a unit, infringed the JumpSport Patents. *See* Kroll Decl., ¶ 12. When trial began in the First Infringement Action on November 3, 2003, Hedstrom made an oral motion in court for an order clarifying that JumpSport's infringement claims extended only to the "JumpGuard" units, and not to other Hedstrom trampoline enclosures. In a ruling on November 5, 2003, the Court granted the motion. Kroll Decl., Exh. E.

On November 10, 2003, JumpSport filed a request for the Court to reconsider its November 5th ruling, which Hedstrom opposed in a response dated November 13, 2003. Kroll Decl., Exhs. F&G. JumpSport requested that its infringement claim against Hedstrom not be limited to the JumpGuard product, because JumpSport believed that other Hedstrom enclosures (which do not differ in substantial ways from the JumpGuard units) infringed the JumpSport Patents, and JumpSport did not intend to limit its claims to the JumpGuard units. JumpSport argued, *inter alia*, that if the Court ordered the claims limited to the JumpGuard product, JumpSport would bring other claims against Hedstrom regarding such other products in a new and separate action, after the jury verdict in the First Infringement Action. Kroll Decl., ¶ 13. The Court denied the reconsideration request in a trial ruling on November 14, 2003. *Id.*, Exh. H.

On December 5, 2003, the jury in the First Infringement Action returned a verdict against Hedstrom, finding that Hedstrom's JumpGuard products infringed certain claims of both JumpSport Patents. Kroll Decl., ¶ 15 & Exh. I. The jury also found that another defendant,

Jumpking, infringed various claims of the JumpSport patents. *Id.* Post-trial motions are pending, and JumpSport expects both sides will ultimately appeal the judgment. *Id.*

### C.    The Parties' New Patent Lawsuits Regarding Other Hedstrom Enclosures.

On November 19, 2003, within a matter of days after the Court issued its ruling denying JumpSport's motion to reconsider the "JumpGuard" ruling, before the parties had finished presenting their cases to the jury in the First Infringement Action, and without advance notice to JumpSport or to the Court in that lawsuit, Hedstrom filed its declaratory relief Complaint in this lawsuit. Kroll Decl., ¶ 16. Hedstrom did not serve the complaint on JumpSport until January 16, 2004. *Id.*

Two days earlier, on January 14, 2004, during the briefing on post-verdict motions in the First Infringement Action, JumpSport filed a complaint in the District Court for the Northern District of California against Hedstrom, Kmart, and other defendants, charging them with infringing JumpSport's patents through their manufacture and/or sale of Hedstrom trampoline enclosure products other than the JumpGuard units. Kroll Decl., ¶ 17 & Exh. J. On February 4, 2004, that action, entitled *JumpSport, Inc. v. Hedstrom Corporation et al.*, Civil Action No. C-04-0199 RS (the "Second Infringement Action"), was ordered "related" to the First Infringement Action, and reassigned to Judge Phyllis J. Hamilton, the judge who presided over the First Infringement Action. *Id.*, Exh. 18. JumpSport served that complaint on the defendants therein by waivers of process signed January 15, 2004, and filed an amended complaint (dropping one of the retailers as a defendant) on February 20, 2004. *Id.*, ¶ 17 & Exh. 17.

The claims in the Second Infringement Action are identical to those raised in the present declaratory relief action. In particular, both actions seek an adjudication of the extent to which the Hedstrom trampoline enclosures, other than the JumpGuard products involved in the First Infringement Action (the "Other Hedstrom Enclosures"), infringe the claims of the JumpSport patents.[1] (Complaint, ¶ 11; JumpSport First Amended Complaint "FAC," Kroll Decl., Exh. J,

---

[1]    Although the Hedstrom complaint in this lawsuit seeks a judicial determination that "none of Hedstrom's products" infringes any valid claims of the JumpSport Patents (Complaint, ¶ 8), the only products that JumpSport has contended infringe the JumpSport Patents, other than the JumpGuard products that were the subject of the First Infringement Action, are Hedstrom trampoline enclosure products. Kroll Decl., ¶ 17 and Exh. J.

¶¶ 24-25, 29.) Both actions seek a judicial determination regarding the collateral estoppel or res judicata effect of the determinations made in the First Infringement Action on the claims in the subsequent lawsuits. (Complaint, ¶ 13; FAC, ¶ 24.) And both actions seek competing determinations regarding the validity and enforceability of the JumpSport Patents. (Complaint, ¶ 12; FAC, ¶ 28.) The products at issue in both actions are virtually the same as those at issue in the First Infringement Action, except that the JumpGuard units are sold with a trampoline and the Other Hedstrom Enclosures are not. Kroll Decl., Exh. F, p.2. *See* illustration (JumpGuard on left).



### D. The California Court's Intimate Familiarity With The Patents And Disputes.

Having made extensive claim construction and summary judgment rulings relating to claims in the JumpSport Patents, and having presided over a month-long trial in which extensive evidence was presented on the validity of the JumpSport Patents and the extent to which Hedstrom's and other defendants' products infringe the asserted patent claims, the Court in the First Infringement Action is in an ideal position to make determinations of all of those issues which are at issue in the present lawsuit. For example, in a series of claim construction or "Markman" rulings on April 1, 2003, June 10, 2003, and July 18, 2003, the Court issued its rulings -- following extensive briefing and evidence submitted by the parties -- on the meaning of all of the relevant disputed terms in the JumpSport Patents. Kroll Decl., ¶ 10, Exh. C. The Court also issued a carefully considered Order, dated June 2, 2003, ruling on Hedstrom's and the other defendants' motions for summary judgment under 35 U.S.C. §§ 102 and 103, asking for an order that the claims of the JumpSport Patents are invalid by reason of obviousness or anticipation by prior art references. *Id.*, ¶ 11 & Exh. D.

5

The California Court is also currently reviewing post-verdict briefing submitted by both sides regarding legal matters relating to patent validity and infringement, including Hedstrom's and the other defendants' assertion that the asserted JumpSport Patent claims are invalid due to inequitable conduct on the Patent Office or improper inventorship, and JumpSport's alternative motion to correct the inventorship on the patents under 35 U.S.C. § 256.  Kroll Decl., ¶¶ 7 & 9. The parties have already taken extensive discovery in the Northern District of California relating to the JumpSport Patents and Hedstrom's products.  That discovery related not just to the JumpGuard products but also to other Hedstrom enclosures.  *Id.*, ¶ 8.

### E.    Location Of Parties, Witnesses, Documents And Events.

Northern California is the location of the vast majority of events, witnesses and evidence in this lawsuit, and none of the percipient witnesses or relevant evidence is located in Massachusetts. JumpSport's witnesses are almost all located in California.  Publicover Decl., ¶¶ 6, 15.  JumpSport is a California corporation, with its principal place of business in Saratoga, northern California.  *Id.*, ¶ 2.  The alleged infringement thus harmed JumpSport in California.

Plaintiff Hedstrom is not a resident of Massachusetts.  Complaint, ¶ 1.  Instead, it is a Delaware corporation, with its principal place of business in Mount Prospect, Illinois, and with its manufacturing facilities in Bedford, Pennsylvania.  *Id.*; Publicover Decl., ¶ 9; Kroll Decl., ¶ 4 and Exh. A.  Its only connection to Massachusetts is the fact that it has patent counsel located there. JumpSport has never done any business with Hedstrom in Massachusetts.  Publicover Decl., ¶ 9. Although JumpSport had business dealings with Hedstrom in 1997 and 1998 (which predated the parties' dispute about Hedstrom's patent infringement), that business was transacted entirely in Northern California and in Bedford, Pennsylvania, and did not involve Massachusetts.  *Id.*  The Complaint does not allege that Hedstrom had any contact with JumpSport in Massachusetts, or even that Hedstrom has any connection with Massachusetts.

## III.   ARGUMENT

### A.    Because This Action Misuses The Declaratory Judgment Act, This Court Should Decline Jurisdiction And Dismiss This Action.

The authority of the federal courts to issue a declaratory judgment derives from the Declaratory Judgment Act.  *See* 28 U.S.C. § 2201(a) (in cases of actual controversy, a federal court

"may declare the rights and other legal relations of any interested party seeking such declaration"). Whether a federal court exercises that authority, however, is a matter within the court's discretion. The Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). *See also Green v. Mansour,* 474 U.S. 64, 72 (1985) (the statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant"); *Sturm, Ruger & Co., Inc. v. Occupational Safety and Health Admin.*, 186 F.3d 63, 64 (1st Cir. 1999) (noting that declaratory relief is a remedy committed to judicial discretion informed by considerations of equitable restraint); *DeNovellis v. Shalala,* 124 F.3d 298, 313 (1st Cir. 1997) (noting that, pursuant to *Wilton*, the "normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration"); *Subaru of New England, Inc. v. Subaru of Augusta, Inc.*, 121 F.R.D. 1, 2 (D. Mass. 1988) ("the District Court has some discretion as to whether or not to entertain a declaratory judgment action").  In situations in which the Declaratory Judgment Act results in a "multiplicity of suits," a court may utilize the venue transfer provision, 28 U.S.C. § 1404(a), to consolidate separate actions, or "may even in its discretion dismiss a declaratory judgment . . . suit if the same issue is pending in litigation elsewhere." *Abbott Labs. v. Gardner*, 387 U.S. 136, 154-55 (1967).

Here, Hedstrom is not the type of plaintiff that the Declaratory Judgment Act was designed to protect.  The Act is intended to provide the declaratory plaintiff with relief from the "uncertainty and insecurity" of not knowing whether it will be sued. *Lexington Ins. Co. v. City of Phoenix*, 1996 U.S. Dist. LEXIS 11694, *5 (D. Mass. July 31, 1996). *See also Hanes Corp. v. Millard*, 531 F.2d 585, 592-93 (D.C. Cir. 1976).  Hedstrom faced no such uncertainty or insecurity in this instance. To the contrary, Hedstrom filed this action *after* JumpSport made it clear, in the hearing on the "JumpGuard" issue, that it would bring a further infringement action if the Other Hedstrom Enclosures were determined not to be at issue in the First Infringement Action, and if Hedstrom continued to infringe the JumpSport Patents.  *See* Kroll Decl., ¶ 13 & Exh. F.  As with the declaratory plaintiff in *Lexington*, there is "not a scintilla of evidence" that Hedstrom was motivated to bring its action by any concern about uncertainty or delay.

Knowing that such a subsequent action would be filed in Northern California, where

JumpSport resides and where the parties had already litigated substantially the same issues of fact and law for over two years, Hedstrom filed this action within a matter of days after the Court made its ruling on the "JumpGuard" issue. Kroll Decl., ¶ 16. In other words, Hedstrom "raced to the courthouse" to file a declaratory relief action in its own preferred forum (where its counsel, but none of the parties or percipient witnesses are located). Such a "pre-emptive strike misuses the declaratory relief action." *Lexington*, 1996 U.S. Dist. LEXIS 11694, *5. *See also Perez v. Ledesma,* 401 U.S. 82, 119, n.12 (1971) (Brennan, J., concurring in part and dissenting in part) ("The federal declaratory judgment is not a prize to the winner of a race to the courthouses").

Thus, in such circumstances, courts do not hesitate to dismiss such preemptive "forum-shopping" suits. *See Subaru of New England, Inc. v. Lakes Subaru, Ltd.,* 1999 U.S. Dist. LEXIS 22856 (D. Mass. Apr. 26, 1999) (dismissing first-filed lawsuit which was "not merely seeking declaratory protection against a previous threat" but which "was attempting to preempt anticipated litigation by [defendant] and secure for [plaintiff], the defendant in interest, its choice of forum," stating that "Courts frown upon this tactical move, considering it a 'misuse[] [of] the declaratory relief action'"); *Lexington*, 1996 U.S. Dist. LEXIS 11694, *8 (courts have exercised their discretion to dismiss otherwise proper actions for declaratory relief "when they concluded a suit was anticipatory"), citing *Hanes*, 531 F.2d at 585; *Allied-General Nuclear Services v. Commonwealth Edison Co.*, 675 F.2d 610, 611 (4th Cir. 1982); *Gribin v. Hammer Galleries*, 793 F. Supp. 233, 234-35 (C.D. Cal. 1992); *909 Corp. v. Bolingbrook Police Pension Fund,* 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) (a court cannot allow a party to "secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum.")

In addition to being a "preemptive strike," Hedstrom's declaratory action may be motivated by an attempt to avoid appearing before the same Court that denied Hedstrom's motions for summary judgment as to invalidity of the JumpSport patents, and in which a jury found that Hedstrom trampoline enclosures infringed valid claims of the JumpSport patents. *See* Kroll Decl., ¶¶ 11 & 15, Exhs. D & I. That Court has already ruled that the "mirror" infringement action JumpSport filed in Northern California regarding the Other Hedstrom Enclosures is "related" to the First Infringement Action under the court's local rules. *See* Kroll Decl., ¶ 18, Exhs. K (order) & L

8

(N.D. Cal. Civil L.R. 3-12(b) providing that "related" case means one involving "[s]ubstantially the same parties, property, transaction, event or question of law," and where there would be "an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges"). Hedstrom's attempt to avoid litigating the parties' dispute in that efficient forum, through the tactic of its anticipatory suit, should not be condoned. *See Subaru of New England*, 1999 U.S. Dist. LEXIS 22856, *7.

The present circumstances constitute an exception to the so-called "first-filed preference" rule, under which, other things being equal, a court will prefer the forum of the first-filed action. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir. 1977) ("While the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound"). Because Hedstrom's declaratory relief action is a transparent attempt to preempt JumpSport's choice of forum by "winning the race to the courthouse" to secure a preferred forum, the "first-filed" rule should not be applied. *See Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124 (D. Mass. 2000); *Lexington*, 1996 U.S. Dist. LEXIS 11694, *2-3, 5; *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir. 1967) (refusing to hear declaratory judgment even though declaratory defendant's complaint was not filed until 40 days after the declaratory action).

## B.    This Court Lacks Jurisdiction Over Defendant JumpSport.

As a separate and alternative basis of dismissal, this Court lacks personal jurisdiction over JumpSport, and thus the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). A court in Massachusetts cannot exercise personal jurisdiction over an out-of-state defendant such as JumpSport unless such exercise is (1) authorized by a Massachusetts statute, and (2) consistent with the due process requirements of the United States Constitution. *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Foster-Miller*, 46 F.3d at 145; *Boston Scientific Corp. v. Bonzel*, 132 F. Supp. 2d 45, 49 (D. Mass. 2001). Hedstrom cannot meet this burden.

### 1.    There Is No Jurisdiction Under The Massachusetts Long-Arm Statute.

The Massachusetts long-arm statute, Section 3(a) of G.L. c. 223A, provides in pertinent

part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity *arising from* the person's (a) transacting any business in this commonwealth. . . ." (Emphasis added.)  To satisfy its burden under the Massachusetts long-arm statute, Hedstrom must show both that JumpSport is or was "transacting business" in Massachusetts[2] and that Hedstrom's claim "arise[es] from" the transaction of that business.  *See Marino v. Hyatt Corp.*, 793 F.2d 427, 428 (1st Cir. 1986).  The Massachusetts Supreme Court interprets this nexus to require that the claim "was made possible by, or lies in the wake of, the transaction of business" by JumpSport in Massachusetts." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 771 (1994).  *See also New Hampshire Insurance Guaranty Association v. Markem Corp.*, 424 Mass. 344, 347 (1997) ("Personal jurisdiction is limited to causes of action arising out of the business the person sought to be reached transacts in the State and does not extend to all persons transacting any business at all in the State").  In this case, Hedstrom cannot satisfy its burden because its cause of action does not *arise from* any business conducted by JumpSport in Massachusetts.

Hedstrom's claim of jurisdiction here is similar to that of the plaintiff in *Singer, PPA v. Piaggio & C. (s.p.a.)*, 420 F.2d 679 (1st Cir. 1970), a case dismissed because neither the plaintiff nor the defendant resided in Massachusetts and because the plaintiff's cause of action did not arise from the defendant's conduct in Massachusetts.  In *Singer*, the plaintiff was a Pennsylvania resident injured while using a scooter manufactured by the defendant, an Italian company.  The defendant

---

[2]    Although JumpSport does sell some of its JumpCourt™ trampoline enclosure products to Massachusetts consumers, most of those sales are "indirect" sales, to a retailer, BJ's Wholesale, which in turn sells them to consumers.  Publicover Decl., ¶ 12.  JumpSport's sales to BJ's do not constitute "transacting business" in Massachusetts because the sales actually take place outside Massachusetts, where the manufactured goods are transported, freight on board (F.O.B.), from JumpSport's Virginia warehouse to BJ's distributions in New Jersey, Florida and Massachusetts, by carriers paid by BJ's.  *Id.  Cf. Sterilite Corp. v. Spectrum Int'l, Inc.*, 43 U.S.P.Q.2d 1198, 1997 U.S. Dist. LEXIS 11151, *9-10 (D. Mass. 1997) (patentholder's shipments of products to Massachusetts retailer did not constitute "transacting business" under long-arm statute because "generally, shipments F.O.B., standing alone, do not create jurisdiction" under the statute), citing cases.  Nor do BJ's sales of the JumpCourt™ to consumers constitute "transacting business," since those sales are BJ's sales, rather than JumpSport's sales.  *See id.*, *10-11 (retailer's sales were "indirect," not direct sales of patentholder who did "not maintain any offices or stores in Massachusetts").

distributed some of its scooters through a Massachusetts corporation, but the plaintiff presented no evidence that his particular scooter "was ever in Massachusetts." *Id.*, at 681. In finding that the plaintiff's assertion of jurisdiction did not satisfy the Massachusetts long-arm statute, the court reasoned: "It would be an unwarranted extension of the statute to include shipments elsewhere [*i.e.*, to Pennsylvania] merely because . . . goods unrelated to the cause of action may have been introduced into the commonwealth." *Id.* The *Singer* court further observed that:

> In excluding this type of jurisdiction Massachusetts may well have wished not to concern itself with disputes in which it had no interest in the subject matter, and where suit would be presumptively inconvenient, if not unfair, to parties and witnesses.

*Id. See also Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir. 1997) (court lacked jurisdiction over out-of-state defendant in a contract action because the activities by the parties in Massachusetts "were extraneous to the formation of the Agreement" which was at issue); *New Hampshire Insurance Guaranty Association*, 424 Mass. at 349 (no personal jurisdiction where both plaintiff and defendant were based in New Hampshire, and the insurance coverage dispute between the parties did not involve business by the defendant in Massachusetts).

These same principles apply to declaratory relief actions, including those seeking declarations of patent invalidity and/or non-infringement. *See, e.g., Sterilite*, 43 U.S.P.Q.2d 1198, 1997 U.S. Dist. LEXIS 11151; *Gesco Int'l Inc. v. Luther Medical Products Inc.*, 17 U.S.P.Q.2d 1168, 1171 (W.D. Tex. 1990). Indeed, in that context, the authority attests that there is a lack of jurisdiction *even where the plaintiff is a Massachusetts resident*, unless there is a causal connection between the Massachusetts conduct and the declaratory relief claims. In *Sterilite*, for example, a suspected patent infringer, Sterilite, a Massachusetts resident, brought a declaratory relief action against a patentholder, Spectrum, a New Jersey company. The defendant's contacts with Massachusetts included: (1) sales of Spectrum products to Massachusetts retailers; (2) sales of Spectrum products by Massachusetts retailers; and (3) sending letters to Sterilite in Massachusetts concerning suspected patent infringement. *Id.*, at *8. *Despite plaintiff's being a Massachusetts resident and receiving accusatory letters there*, the court held that none of these contacts sufficed for jurisdiction under the Massachusetts long-arm statute. *Id.*, at *9-15.

First, as discussed above, the *Sterilite* court found that the sales did not constitute

11

"transacting business" in Massachusetts because they were shipped to retailers from New Jersey "F.O.B.," and the patentholder itself did not maintain any offices or stores in Massachusetts. *Id.*, at *8-10. Moreover, even if such sales were "transacting business," the declaratory relief claim did not "arise from" those sales, since it had to do with the validity of the *patents* (not the products sold), and there was no showing that the claim would not have been made "but for" the sales in Massachusetts. *Id.*, at *10-11, citing *KVH Indus., Inc. v. Moore*, 789 F. Supp. 69, 71-72 (D.R.I. 1992) ("[t]he existence of the disputed patent rights does not pertain to the defendant's actions in the forum"). *See also Ryobi America Corp. v. Peters*, 815 F. Supp. 172, 177 (D.S.C. 1993) (declaratory judgment action involving a patent did "not arise out of" use or sales of patentholder's product in the forum; the fact that patentholder's vendor sold some of its products in the forum "is not relevant to any patent infringement issue"); *Gesco Int'l Inc. v. Luther Medical Products Inc.*, 17 U.S.P.Q.2d 1168, 1171 (W.D. Tex. 1990) (suit to declare patent invalid did not "arise out of the sale of the patented product in the forum State"; patentholder's previous sales to plaintiff suspected infringer, and sales to other Texas customers, did not provide the requisite connection to declaratory relief claim to support jurisdiction).[3]

A recent Federal Circuit case addressing the analogous New York long-arm statute[4] is also instructive. In *Graphic Controls Corp. v. Utah Medical Products Inc.*, 149 F.3d 1382 (Fed. Cir. 1998), a Utah patentholder sent cease-and-desist letters to the declaratory relief plaintiff, a New York corporation. The defendant patentholder sold a limited volume of its products in the state through independent distributors, and provided national access through the internet and an "800" number, but had no physical presence in New York. *Id.*, at 1384. The court held that, under the "nexus" requirement of the New York long-arm statute, as it has been interpreted by New York

---

[3]    These latter three cases did not address the Massachusetts long-arm statute, but instead the "nexus" requirement under due process analysis for establishing specific jurisdiction over a defendant based on its forum activities, which is the claim must "arise out of, or relate to, the defendant's forum-state activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Their analysis is nevertheless helpful in applying the even more rigorous "nexus" requirement under the Massachusetts long-arm statute.

[4]    *See* N.Y. Civ. Prac. § 302(a)(1) (providing that jurisdiction exists if the defendant "transacts any business within the state or contracts to supply goods or services in the state" and the cause of action arises from such acts).

courts, the plaintiff's cause of action did not arise out of the patentee's sales in the state but rather out of the defendant's sending of two letters accusing infringement. *Id.*, at 1387. The action "did not arise because [the patentee] was shipping its product to New York, had a distributor soliciting sales in New York, or had a representative that occasionally visited New York." *Id.* Instead, the action "arose because [the patentee] claimed [plaintiff's product] infringed [its] patent and threatened suit." *Id.*[5]

Thus, this is not a case where, as required, the plaintiff's claim "aris[es] from," or was "made possible by," JumpSport's sales or solicitation of business (if any) in Massachusetts. The parties did not enter into any licensing or other arrangements in Massachusetts, nor did Hedstrom or JumpSport receive or provide payment to each other in Massachusetts. Further, the cause of action in this case -- the parties' dispute about the validity of the JumpSport Patents and Hedstrom's infringement thereof -- has nothing to do with sales of JumpSport's product in Massachusetts. *Sterilite*, 1997 U.S. Dist. LEXIS 11151, *11; *Graphic Controls*, 149 F.3d at 1387. Finally, any correspondence by JumpSport to Hedstrom regarding the suspected infringement or proposed licensing arrangements took place in California and Illinois and/or Pennsylvania, where the parties transact such business.[6] Under these circumstances, G.L. c. 223A, § 3(a) simply does not afford the Court jurisdiction over JumpSport, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

---

[5]     The court held that even those activities, directed to a New York resident, did not rise to the level necessary to support jurisdiction under the New York long-arm statute. *Id.*

[6]     Thus, cases in which a Massachusetts resident brings a declaratory relief patent claim arising from the patentholder's sending of "cease-and-desist" letters to a Massachusetts company that is conducting competing business there, are inapposite. *See Nova Biomedical Corp. v. Moller*, 629 F.2d 190 (1st Cir. 1980) (defendant also had exclusive licensing arrangement with Massachusetts company which provided defendant with royalties from use of the patent in Massachusetts and obligated defendant to prosecute and protect its patents on behalf of the licensee); *Der-Tex Corp. v. Thatcher*, 815 F. Supp. 41 (D. Mass. 1993) (same). In any event, even such contacts might not suffice for jurisdiction under the Massachusetts long-arm statute, depending on their extent and significance. *See Graphic Controls Corp.*, 149 F.3d at 1387; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("[a] patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement"). *See also Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (accusatory infringement letters sent to party's legal counsel are viewed as if sent to the state in which the party resides).

13

## 2. Personal Jurisdiction Does Not Comport With Federal Due Process.

For similar reasons, even if jurisdiction could be exercised under the Massachusetts long-arm statute, jurisdiction over JumpSport in this case would not comport with federal due process requirements. To establish specific jurisdiction over a defendant in a patent case, a plaintiff must show that its claim "arise[s] out of or directly relate[s] to the defendant's activities in the forum state." *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999). *See also Boston Scientific*, 132 F. Supp. 2d at 49 (citing authority that requiring a "demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities"). Under the same authority discussed above, any contacts JumpSport has with Massachusetts are not sufficiently related to the basis of Hedstrom's declaratory relief claim to meet this nexus requirement. *See, e.g., KVH*, 789 F. Supp. at 71-72; *Ryobi*, 815 F. Supp. at 177; *Gesco*, 17 U.S.P.Q.2d (BNA) at 1171.

Moreover, to meet due process requirements, jurisdiction over the defendant must also be "reasonable" -- i.e. comport with principles of "fair play and substantial justice." *Burger King*, 471 U.S. at 477-78 (reasonableness factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies). Here, in light of JumpSport's attenuated contacts to Massachusetts, the lack of a sufficient nexus between any such contacts and this lawsuit, the fact that *neither party* is a resident of Massachusetts, the demonstrable superiority and efficiency of litigating this dispute in Northern California where there is a "mirror action" pending before a judge who has presided over the parties' related litigation for over two years, the blatant "forum shopping" aspect of the filing of this lawsuit, and the other circumstances previously discussed, jurisdiction in Massachusetts would neither be reasonable nor comport with "fair play." *Cf. Boston Scientific*, 132 F. Supp. 2d at 51 (jurisdiction in Massachusetts would be unreasonable where a "more comprehensive" action was pending between the parties in another jurisdiction, where "the most efficient resolution of the controversy" could be had); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2d Cir. 1996) (despite contacts sufficient for "general jurisdiction," jurisdiction over nonresident defendant violated due process because of "reasonableness" considerations, including inefficiency

of conducting litigation in forum state and attenuated nature of nonresident plaintiff's interest in pursuing case there).

### C.    Venue Is Not Proper In This Court.

Venue in declaratory relief actions regarding the alleged invalidity or non-infringement of patents is governed by the general federal venue statute, 28 U.S.C. § 1391(b). *U.S. Aluminum Corp. v. Kawneer Co*, 694 F.2d 193, 195 (9th Cir. 1982). That statute provides in relevant part that: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides[7] . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Here, venue is not proper under any of the three subsections of the venue statute.

Venue is improper under subsection (1), because JumpSport is not subject to jurisdiction in Massachusetts, as discussed at length above. Nor can venue be exercised under subsection (2), because no "substantial part of the events or omissions giving rise to the claim" occurred in Massachusetts. Not only did no events giving rise to the invention of the patent claims, or issuance of the JumpSport Patents, occur in Massachusetts, but any discussions or conduct relating to the parties' dispute about infringement occurred in Northern California and Illinois and/or Pennsylvania, not Massachusetts. *See, e.g., Gesco*, 1990 U.S. Dist. LEXIS 18877, *18-20 (where inventors and all information regarding the product and patents were in California, threats of infringement were made there, and related litigation was ongoing there, and where defendant had no employees, offices or physical connection to forum state, declaratory claim "arose" there and venue was improper in Texas). Finally, JumpSport cannot be "found" in Massachusetts pursuant to subsection (3), since it has no offices, employees, assets or any other physical presence there. Publicover Decl., ¶ 3.

Because venue is not proper in Massachusetts, the Court should dismiss this lawsuit under

---

[7]    Under Section 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

28 U.S.C. § 1406(a) (requiring a court to dismiss or transfer a case filed in wrong venue).

> **D.    Even If Venue In This Court Were Proper, The Case Should Be Transferred To The District Court For The Northern District Of California under 28 U.S.C. § 1404(a).**

Even in the event that this Court were to find venue to be proper in Massachusetts, the Court should transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[8]  *Id.*  The goal of section 1404(a) is to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

The decision to transfer a case pursuant to § 1404(a) rests within the sound discretion of the trial court. *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977). In making its determination, the Court must balance several factors, including the convenience of the parties and witnesses, the location and availability of documents, the connection between the forum and the issues, the state or public interests at stake, and the interests of justice. *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124 (D. Mass. 1998); *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991). Of the factors, the convenience to the expected witnesses is probably the most important. *Id.* Although there is generally a presumption in favor of plaintiff's choice of forum, and defendant has the burden of showing that a transfer is warranted, the weight to be accorded plaintiff's choice of forum varies with the circumstances of the case. *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 5 (D. Mass. 1987); 15 Wright, Miller & Cooper, Federal Practice and Procedure, § 3848 at 389-92 (1986). "Where [as here] the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight . . . and 'is given equal consideration along with the other factors which must be considered under § 1404.'" *Brant*, 671 F. Supp. at 5, citing, *inter alia*, *Goodman v. Schmalz*, 80 F.R.D. 296, 302 (E.D.N.Y. 1978); *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F. Supp. 1048, 1051 (N.D. Ill. 1982).

---

[8]    Venue and jurisdiction in the Northern District of California are proper, since Defendant JumpSport is incorporated, and has its principal place of business, in California.

Here, such a transfer is mandated because of the extreme disparity between the burden and inconvenience of litigating the case in Massachusetts (where *none* of the parties or witnesses reside or have offices, and where the only tie is that Hedstrom's trial counsel in the First Infringement Action is located there) and the reasonableness and practicality of litigating it in Northern California, where virtually *all* of JumpSport's employees, witnesses, documents and counsel are located, and where *both* parties are currently litigating the First Infringement Action which is closely related to the present action.

*Convenience of the Parties*.  If this case simply involved "shifting" an equal burden of litigating in a distant forum from JumpSport to Hedstrom, then this factor would not favor transfer. But this is not the case.  Northern California (along with Pennsylvania and Illinois) is where the parties' previous business relationship was negotiated and performed, and where the parties engaged in discussions relating to JumpSport's patents and Hedstrom's alleged infringement thereof.  Massachusetts, on the other hand, has *no connection* with any of the events involved in this lawsuit.  Here, *neither* of the parties is domiciled in Massachusetts, or even has any offices here.  The only connection to Massachusetts is that Hedstrom's chosen patent counsel is located in Massachusetts.  Indeed, it would appear that Hedstrom selected the Massachusetts forum out of convenience to its counsel alone, and without regard to availability of documents, witnesses, or convenience of either party.

Moreover, Hedstrom is a large national company, whereas JumpSport is a small company with only *nine* employees and annual gross revenues (last year) of approximately $5 million. *See* Publicover Decl., ¶ 17.  It would be extremely disruptive to JumpSport's business for JumpSport witnesses or representatives to be forced to travel to Massachusetts for proceedings there.  *Id.* JumpSport is struggling to be profitable.  *Id.*  Being subject to a lawsuit in Massachusetts, and having to engage local counsel in Massachusetts and participate in legal proceedings in that distant locale, would jeopardize JumpSport's profitability and would seriously inconvenience JumpSport personnel.  *Id.*  On the other hand, litigation in California would *preserve both parties'* resources and financial means.  Given the duplication of time and effort that would be entailed in re-litigating issues with which the Court in California is intimately familiar, litigating this case in Massachusetts would be more costly for Hedstrom as well as for JumpSport.

17

**Convenience of Witnesses.**  This factor weighs heavily in favor of transfer. Northern California is the location of the majority of witnesses in this lawsuit, including most of the inventors of the JumpSport patents, some of whom are not JumpSport employees. Publicover Decl., ¶ 6. In the First Infringement Action, Hedstrom challenged the validity of the patents in part on the basis of inventorship, so the testimony of such witnesses might be relevant here as well. Kroll Decl., ¶¶ 7 & 9. Hedstrom also introduced, or sought to introduce, testimony of certain of its own employees, including Gary Stoffer, who purportedly contributed to inventorship. Publicover Decl., ¶ 15. Although such employees do not reside in California, they also do not reside in Massachusetts, but instead Pennsylvania. *Id.*, ¶¶ 15-16. The two JumpSport employees who testified in the First Infringement Action, and who would be expected to testify in the parties' current dispute, reside in California (Mark Publicover) and Missouri (Steve Moulton). *Id.*, ¶ 15. To JumpSport's knowledge, *none of the percipient witnesses* -- with the exception including Hedstrom's witnesses in the First Infringement Action -- are located in Boston or elsewhere in Massachusetts. *Id.*, ¶ 16. (JumpSport's experts reside in California, whereas Hedstrom's two experts, only one of whom testified, reside in Massachusetts. *Id.*)

Hedstrom is a Delaware corporation with headquarters in Illinois and manufacturing facilities in Pennsylvania. Complaint, ¶ 1; Kroll Decl., ¶ 4. Thus, any Hedstrom employees or other witnesses who would be expected to testify would have to fly to Boston in any event, rendering that jurisdiction no more convenient even for Hedstrom's witnesses. Thus, this factor weighs strongly in favor of transfer. *Cf. Gesco Int'l, Inc.*, 1990 U.S. Dist. LEXIS 18877, *17 (where "inventors and all information pertaining to patentability of the product" were in California, court found it would be "inherently burdensome" to present that evidence in Texas, and that California "has the strongest interest in adjudicating this dispute").

**Availability of documents.**  The parties have already taken extensive discovery in the Northern District of California relating to the JumpSport Patents and Hedstrom's products. That discovery related not just to the JumpGuard products but also to other Hedstrom enclosures. Kroll Decl., ¶ 8.

**Trial Efficiency/Judicial Economy.**  This factor, which relates to whether transfer will

18

avoid duplicative litigation, effect judicial economy and prevent waste of time and money,[9] cries out in favor of transfer to the Northern District of California. As discussed above, the parties have been litigating, for over two years, a substantially similar patent infringement and declaratory relief action in the Northern District of California that will guide the course of the present lawsuit.[10] The Court in that lawsuit is intimately familiar with the patents at issue in the present dispute, as well as all of the evidence and witnesses that are likely to be relevant to this closely related action. As examples, the California court has already made extensive claim construction and summary judgment rulings relating to claims in the JumpSport Patents, and presided over a month-long trial in which extensive evidence was presented on the validity of the JumpSport Patents and the extent to which Hedstrom's and other products infringe the asserted patent claims. Kroll Decl., ¶¶ 9-11, Exhs. C-D.

Furthermore, there is already a second infringement lawsuit pending in the Northern District of California, which is not only a "mirror image" of Hedstrom's declaratory judgment claims here, but which also names other parties who should be included in the infringement dispute -- i.e. certain of Hedstrom's retailers of its trampoline enclosures -- as well as a claim for damages. The Court there has already ruled that this Second Infringement Action involves "[s]ubstantially the same parties, property, transaction, event or question of law" as the First Infringement Action, and that there would be "an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Kroll Decl., ¶18, Exhs. K & L. The Second Infringement Action now pending in the Northern District of California will provide the most comprehensive solution to the entire controversy between JumpSport and Hedstrom, thus

---

[9]    *Van Dusen*, 376 U.S. at 616; *Promuto v. Waste Management, Inc.*, 44 F. Supp. 2d 628, 641 (S.D.N.Y. 1999); *Republic of Bolivia v. Philip Morris Cos., Inc.*, 39 F. Supp. 2d 1008, 1009-1010 (S.D.Tex. 1999).

[10]    Indeed, as Hedstrom's counsel has readily acknowledged, the outcome of this case is likely to be guided by the rulings and judgment in the First Infringement Action, as well as by a determination of the appropriate collateral estoppel and/or res judicata effect to be accorded to that judgment. The California court is already intimately familiar with all of the pleadings and circumstances leading up to its ruling that the First Infringement Action was limited to the Hedstrom JumpGuard product, and is in the best position to determine the res judicata and/or collateral estoppel effect to be given to the judgment in that action with respect to the current claims regarding Other Hedstrom Enclosures.

<u>LOCAL RULE 7.1(a)(2) CERTIFICATION</u>

Counsel for JumpSport hereby certify that they have conferred with plaintiff's counsel and have attempted in good faith to resolve or narrow the issues raised in this motion. No issues raised in this motion have been resolved or narrowed.

Dated: February 26, 2004                    Respectfully submitted,

                                            JUMPSPORT, INC.


                                            /s/ Gregg Shapiro
                                            Gregg Shapiro (BBO #642069)
                                            CHOATE HALL & STEWART
                                            Exchange Place
                                            Boston, MA 02109-2891
                                            (617) 248-5000


                                            LEGAL STRATEGIES GROUP
                                            Peter H. Goldsmith
                                            Christine Amatruda
                                            5905 Christie Ave.
                                            Emeryville, CA 94608
                                            (510) 450-9600

                                            Attorneys for JUMPSPORT, INC.

120260