## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HEDSTROM CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-12308 PBS |
| | ) | |
| JUMPSPORT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF HEDSTROM CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO F.R.C.P. 12(B)(1), 12(B)(2), 12(B)(3) AND 28 U.S.C. § 2201, OR
TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**

## I.    INTRODUCTION

Plaintiff Hedstrom Corporation ("Hedstrom") hereby opposes the motion of Defendant

JumpSport, Inc. ("JumpSport") to dismiss this case for lack of subject matter and personal

jurisdiction or alternatively to transfer the case to the Northern District of California.

First, by directly and unequivocally threatening Hedstrom and its customers with a second

patent infringement lawsuit involving the same two patents already litigated in the first lawsuit,

JumpSport has created an "actual controversy" between the parties.  The existence of such an "actual

controversy" vests this Court with subject matter jurisdiction over this declaratory action.  Second,

JumpSport is subject to at least general jurisdiction in Massachusetts because it has maintained

continuous and systematic contacts with the Commonwealth of Massachusetts thus rendering this

Court's exercise of personal jurisdiction over JumpSport reasonable and foreseeable.  Specifically,

JumpSport sells products covered by one or more claims of the patents-in-suit through its largest

retailer, BJ's Wholesale Club, which has its principal place of business in this district and through its

web-site www.jumpsport.com.  Thus JumpSport derives substantial and continuous revenue from its

sales within the Commonwealth of Massachusetts. In addition, JumpSport actively promotes and advertises its products in Massachusetts. These purposeful and ongoing contacts are sufficient to subject JumpSport to personal jurisdiction in Massachusetts. Third, this District is substantially more convenient for Hedstrom and its witnesses than the Northern District of California. All of the documents from Hedstrom's files that are relevant to infringement are also present in this District. Finally, the Northern District of California is no better equipped than this Court to resolve the issues likely to be involved in this case, particularly the claim preclusion issue which should dispose of the case by summary judgment.

Despite the existence of an "actual controversy" and its systematic and continuous contacts with this forum, JumpSport contends that it is not subject to personal jurisdiction in the Commonwealth of Massachusetts. JumpSport's position is without merit and this Court should deny its motion.

## II.   <u>BACKGROUND</u>

This controversy dates back to December 2001, when JumpSport filed a patent infringement lawsuit in the United States District Court for the Northern District of California against Hedstrom and a number of retail defendants who sold Hedstrom's accused products (the "First Action"). *See* Declaration of Daniel J. Kroll In Support of Defendant JumpSport, Inc.'s Motion to Dismiss or Transfer ("Kroll Dec."), Exh. B. Two other trampoline enclosure manufacturers as well as their retailers were also named as defendants in the action. *Id.*

In the First Action, JumpSport alleged that all of Hedstrom's trampoline enclosures, not just Hedstrom's JumpGuard brand enclosures, infringed U.S. Patents 6,053,845 and 6,261,207 (the "'845 patent" and "'207 patent", respectively). *See* Declaration of Kevin Gannon In Support of Hedstrom Corporation's Opposition to Motion to Dismiss ("Gannon Dec."), at ¶ 4. The parties engaged in almost two years of fact and expert discovery related to all of Hedstrom's enclosures. *Id.* Five

2

months prior to the start of trial, the Court granted partial summary judgment to Defendants, finding claims 16 and 40 of the '207 patent invalid as anticipated by a prior art trampoline enclosure. *See* Kroll Dec., Exh. D. JumpSport's remaining patent claims were tried to a jury starting on November 3, 2003.

Pursuant to the Patent Local Rules of the Northern District of California, specifically Patent Local Rule 3-1, JumpSport was required to specify, by a date certain before trial, which products of each of the Defendants it contended infringe which claims of the patents-in-suit and whether the infringement was literal or under the doctrine of equivalents. Gannon Dec., Exh. A. JumpSport complied with this Local Rule requirement, and for reasons only known to it and its lawyers, limited its infringement contentions to Hedstrom JumpGuard enclosures only. Gannon Dec., at ¶ 7.

On the first day of trial, upon the first introduction of evidence, Hedstrom brought to the Court's attention the fact that JumpSport had limited its Infringement Contentions under Patent Local Rule 3-1 to Hedstrom's JumpGuard enclosures only, even though discovery had been provided on all of Hedstrom's enclosures including Hedstrom's non-JumpGuard enclosures, and moved to limit the admission of evidence to the JumpGuard enclosures alone. Gannon Dec., at ¶ 8. In an Order dated November 5, 2003, the Court ruled that JumpSport had indeed limited its infringement contentions to the Hedstrom JumpGuard enclosures under Patent Local Rule 3-1 and as such, could only proceed with its infringement claims against Hedstrom's JumpGuard enclosures. Kroll Dec., Exh. E.

On November 10, 2003, with the Court's permission, JumpSport filed a letter requesting reconsideration of the Court's ruling and Hedstrom filed a letter response to that request. Kroll Dec., Exhs. F and G. The Court denied JumpSport's request from the bench on November 14, 2003. Kroll Dec., Exh. H. The net result of these rulings was that JumpSport's infringement claims were limited to Hedstrom's JumpGuard enclosures, and Hedstrom's non-JumpGuard enclosures were eliminated from the case.

Following the Court's ruling, during the Court's first recess, Mark Publicover, JumpSport's President, approached Thomas O'Konski, Hedstrom's lead trial counsel, and directly and unequivocally threatened to re-sue Hedstrom for its manufacture and sale of non-JumpGuard enclosures. *See* Declaration of Thomas C. O'Konski In Support of Hedstrom Corporation's Opposition to Motion to Dismiss ("O'Konski Dec."), at ¶ 5. However, Mr. Publicover gave no indication as to when such suit would be brought. *Id.* Considering JumpSport's direct and unequivocal threat, and desiring to expeditiously remove the stigma of any further infringement charge against the non-JumpGuard enclosures for itself and its retail customers, Hedstrom filed this declaratory judgment action on November 18, 2003 in this Court ("this Action"). Gannon Dec., at ¶ 9.

Two months later, on January 14, 2004, JumpSport followed through on its threat and sued Hedstrom, as well as Wal-Mart Stores, Inc., Kmart Corporation, Target Corporation and Toys 'R Us-Delaware, Inc. in the District Court for the Northern District of California on Hedstrom's non-JumpGuard enclosures (the "Second Action"). Gannon Dec., Exh. B. On February 20, 2004, JumpSport filed an amended complaint in the Second Action dropping Wal-Mart Stores, Inc. as a defendant.[1] Kroll Dec., Exh. J.

On December 5, 2003, the jury in the First Action returned a Verdict finding most of the asserted claims of the patents-in-suit either invalid or not infringed and that Hedstrom's JumpGuard product infringed only claims 1, 2, 7, 15 and 17 of the '845 patent, and claims 9 and 10 of the '207 patent. Kroll Dec., Exh. I at 2-3, 10. The jury also found that the inventorship listed on both patents was incorrect. *Id.* at 4-5. Therefore, both patents are invalid due to incorrect inventorship under 35 U.S.C. § 102(f) unless and until the inventorship on the patents is corrected.

---

[1] Information which Hedstrom has recently received indicates one of the reasons JumpSport dropped Wal-Mart Stores, Inc. as a defendant in the Second Action because Wal-Mart Stores, Inc. is currently selling trampoline enclosures manufactured by JumpSport's sole licensee, Shen Tai Manufacturing, Shen-Li, under the trade name "Leisure Kingdom". Gannon Dec., at ¶ 12.

In addition, the Court in the First Action has retained for its resolution the issues concerning Hedstrom's and the other Defendants' inequitable conduct counterclaim against JumpSport and JumpSport's request for the correction of inventorship on the patents under 35 U.S.C. § 256. Gannon Dec., at ¶ 11. The parties have fully briefed these matters and both are pending before the Court. *Id.* Either an allowance of Defendants' inequitable conduct motion or a denial of JumpSport's motion to correct inventorship will result in invalidation of the '845 and '207 patents and moot this Action. *Id.* Even if neither of these events occurs, once the Court enters final judgment in the First Action, Hedstrom expects that both sides will file numerous renewed motions for judgment as a matter of law. *Id.* Further, if necessary, Hedstrom and the other defendants expect to appeal at least certain aspects of the Court's claim construction rulings. *Id.*

By being forced to litigate the First Action in California, Hedstrom has suffered severe economic hardship and disruption to its business. *See* Declaration of Annalee Restly in Support of Hedstrom Corporation's Opposition to the Motion to Dismiss ("Restly Dec."), at ¶ 2. In particular, Hedstrom was forced to attend a trial in which the majority of the time and testifying witnesses were wholly unrelated to JumpSport's claims of infringement against Hedstrom. Gannon Dec., at ¶ 13. In light of the fact that the Court planned to take Wednesdays off instead of Mondays or Fridays, moreover, Hedstrom's counsel (whose offices are located in Boston, Massachusetts) and Hedstrom's witnesses (all of whom live in and around the Bedford, Pennsylvania area (Restly Dec., at ¶3)) were forced to stay in San Francisco all week, for four full weeks, and travel only as permitted to and from the East Coast, during the two day weekends. *Id.* In the First Action, Hedstrom filed a motion to bifurcate the trial into a patent infringement phase, which involved all of the defendants including Hedstrom, and an unfair competition phase, which involved only JumpSport and the non-Hedstrom defendants. Gannon Dec., Exh. C. JumpSport opposed Hedstrom's motion and the Court denied it,

forcing Hedstrom and its counsel to attend each day of the four-week trial even though most of those days no evidence was adduced relating in any way to Hedstrom. Gannon Dec., Exhs. D and E.

This District is substantially more convenient for Hedstrom and its witnesses than the Northern District of California. Restly Dec., at ¶ 4. All of the documents from Hedstrom's files that are relevant to its alleged infringement of JumpSport's patents are located at its trial counsel's offices in this District. *Id.* at ¶ 5. Moreover, Hedstom plans to file a motion for summary judgment that JumpSport's renewed claims against Hedstrom's non-JumpGuard enclosures are fully barred by the doctrines of claim preclusion and res judicata. Gannon Dec. ¶ 17. Because this motion does not depend in any way upon an interpretation of the Local Patent Rules of the Northern District of California, the Northern District is no better equipped than this Court to resolve the issues to be raised in that motion which should fully dispose of the case.

## III.  **ARGUMENT**

### A.  **By Issuing A Direct Threat of Suit to Hedstrom, JumpSport Has Created an Actual Controversy Between the Parties and Vested This Court with Subject Matter Jurisdiction.**

The purpose of the Declaratory Judgment Act is to "enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993). To establish jurisdiction under the Act, there must be an actual controversy between the parties. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988). An actual controversy exists when "(1) the declaratory plaintiff has acted in a way that the patentee asserts infringes the patent, or is preparing to act in such a way; and (2) the patentee has created, in the declaratory plaintiff, a reasonable apprehension of suit for infringement." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993).

Hedstrom satisfies both prongs of the jurisdictional analysis. Hedstrom has and continues to produce non-JumpGuard trampoline enclosures that JumpSport contends infringes its patents. Hedstrom also was in reasonable apprehension of being sued for patent infringement when Hedstrom commenced this Action on November 18, 2003. In creating that apprehension, JumpSport did not simply suggest or imply that it might re-sue Hedstrom on its non-JumpGuard enclosures. Rather, JumpSport, through its President, Mr. Publicover, emphatically stated that JumpSport would sue Hedstrom to seek infringement recovery based on non-JumpGuard enclosures that JumpSport and its attorneys, for whatever reason, chose not to implicate in the First Action. *See* O'Konski Dec. at ¶ 5. Such threats, which since first made were never moderated or withdrawn by JumpSport, are more than sufficient to create a reasonable apprehension of suit. *Genentech*, 998 F.2d at 936-37 ("[w]hen the patentee has explicitly charged that a current activity of the declaratory plaintiff is an infringement, certainty has rendered apprehension irrelevant, and one need say no more."); *see also Vanguard Research, Inc. v. Peat, Inc.*, 34 F.3d 1249, 1254 (Fed. Cir. 2002) ("[t]he best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation").

Contrary to JumpSport's contentions, there is much more than a scintilla of evidence that Hedstrom was motivated to bring this suit because of concern about the possibility of uncertainty or delay. The Declaratory Judgment Act, 28 U.S.C. §2001, was specifically designed to address situations as those involved here. *Genentech*, 998 F.2d at 37 ("the purpose of the declaratory Judgment Act [is] to enable a person caught in a controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist"). Following nearly two years of discovery, more than a month of trial, numerous pending post-trial motions, and the specter of a long drawn out appeal and the threats made by Mr. Publicover, Hedstrom was still left to operate under the threat of future litigation with respect to its non-JumpGuard enclosures even though JumpSport had a full and fair opportunity to pursue the non-JumpGuard enclosures in the First Action.

As matters stood on November 18, 2003, when Hedstrom filed this Action, Hedstrom did not know for sure whether it could continue to manufacture and sell its non-JumpGuard enclosures without concern for incurring infringement liability to JumpSport based on what Hedstrom truly believes are invalid and unenforceable patents. Hedstrom's customers have almost unanimously expressed concern about purchasing non-JumpGuard enclosures from Hedstrom. Restly Dec., at ¶6. Hedstrom is required to allay these concerns by defending them in these actions and giving its customers full indemnification commitments. *Id.* Hedstrom thus, had the right, and indeed, the obligation to dispose of JumpSport's threats as expeditiously and inexpensively as possible.

This is not a "preemptive" case in the sense that Hedstrom is seeking to secure a forum before there was a true case and controversy (i.e., while the parties were still discussing or still negotiating the issues). Here, JumpSport, through Mr. Publicover, specifically, directly and unequivocally threatened Hedstrom and its customers with a second infringement action. O'Konski Dec., at ¶ 5. Hedstrom did not have to wait and see if JumpSport in fact sued. It had the right to seek an immediate declaration from this Court that it is free to continue making and selling its non-JumpGuard trampoline enclosures, particularly in light of the claim preclusion (res judicata) issue which Hedstrom submits will fully dispose of the case.

As set forth above, JumpSport has charged Hedstrom with infringing its patents, threatened to re-sue Hedstrom, and, in fact, has re-sued Hedstrom and several of its customers on these same patents in the Northern District of California.[2] Given this conduct by JumpSport, Hedstrom had, and continues to have, a reasonable apprehension of suit, thereby justifying this declaratory action.

---

[2] In a calculated effort to bolster its transfer argument, JumpSport filed its own suit against Hedstrom in the Northern District of California on Friday, January 14, 2004. Gannon Dec., Exh. B. It is well-settled, however, that as between two cases involving the same issues, it is the first-filed action that is preferred, even where that first action is a declaratory judgment action, as here. *See TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) (ruling that the first-filed action is preferred).

**B.**    **This Court Has At Least General Jurisdiction Over JumpSport.**

    **1.**    **JumpSport Has Substantial and Continuous Contacts With The Commonwealth of Massachusetts And Is Thus Subject to Personal Jurisdiction.**

JumpSport is subject to general jurisdiction in Massachusetts because JumpSport maintains "continuous and systematic" contacts with Massachusetts even if it is determined that the cause of action has no relation to those contacts.[3] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Unlike the inquiry under specific jurisdiction, a general jurisdiction inquiry is "dispute blind", and the sole focus is on whether the defendant has sufficient contacts with the forum state to be considered "present." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999). Neither the United States Supreme Court nor the Federal Circuit has outlined a specific test to follow when analyzing whether a defendant's activities within a state are "continuous and systematic." *LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Instead, a court must look at the facts of each case to make this determination. *Id.*

JumpSport's contacts with Massachusetts have not been casual or intermittent. Rather, they have been numerous, substantial and continuing, and have clearly been, and continue to be, directed at Massachusetts' residents. JumpSport sells trampoline enclosure products in the field of the '845 and '207 patents through its largest retailer, BJ's Wholesale Club, which has its principal place of business in Natick, Massachusetts, and through its web-site www.jumpsport.com. Gannon Dec., Exh. F. In addition, JumpSport actively promotes and advertises these products in Massachusetts. *Id. See Hologic Inc. v. Lunar Corp.*, 36 U.S.P.Q.2d 1182 (D. Mass. 1995)(finding general jurisdiction over a defendant because defendant had promoted and sold its products in Massachusetts). Thus, JumpSport derives continuous revenue from its sales within Massachusetts.

---

[3] As discussed in Section C below, Hedstrom does not believe that JumpSport's contacts with Massachusetts have no relation to the claims in this Action and in the Second Action in California.

JumpSport admits that it makes sales to Massachusetts consumers through its largest retailer, BJ's Wholesale Club, and its direct sales to Massachusetts consumers made via its internet website. (JumpSport, Inc.'s Motion to Dismiss, at p. 10 fn. 2). In an attempt to downplay its sales through BJ's Wholesale Club, however, JumpSport argues that since it ships its products F.O.B from its Virginia warehouse it is not subject to jurisdiction in Massachusetts. *Id.* In support of its argument JumpSport cites *Sterlite Corp. v. Spectrum Int'l, Inc.*, 43 U.S.P.Q.2d 1198 (D. Mass 1997). Although the *Sterlite* case indicates that, generally, shipments made F.O.B. standing alone, do not create jurisdiction in Massachusetts, the shipment of large quantities of goods into a state, even F.O.B., does create jurisdiction. *See Buckeye Assoc. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1490 n. 7 (D. Mass. 1985)(if a defendant makes substantial sales within a forum district, it cannot escape jurisdiction and venue in that district simply by requiring shipments to be made F.O.B. outside the forum).

In deciding a motion to dismiss for lack of personal jurisdiction, courts generally accept and construe the facts presented by the plaintiff in a light most favorable to them. *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). BJ's Wholesale Club has sixteen stores in Massachusetts, and is JumpSport's largest retailer in this district. Gannon Dec., Exh. G. As a result, Hedstrom is entitled to the inference that JumpSport makes a large volume of its sales to these stores. Accordingly, because of its substantial sales to BJ's Wholesale Club in this district, JumpSport falls within *Buckeye* and cannot escape jurisdiction by shipping its products F.O.B. outside this district. *Buckeye Assoc.*, 616 F.Supp. at 1490 n. 7.

Further, a Massachusetts resident and anybody else who visits JumpSport's website can order trampoline enclosures and other related products directly from JumpSport. Gannon Dec., Exh. F. Courts often apply the *Zippo* "nature and quality of commercial activity" test for whether a website establishes jurisdiction, dividing websites into three general categories for jurisdictional purposes. *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). In *Zippo*, the

10

court found that where a defendant clearly does business over the internet by entering contracts with residents of other states which involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper." *Id.* at 1124; *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). JumpSport clearly falls into this category, given JumpSport's sales through its "virtual store" on the internet and the use of the internet to advertise and promote its products.[4] Therefore, JumpSport's contacts with Massachusetts are significant enough that they should reasonably have anticipated being sued in Massachusetts.

The Federal Circuit has found general jurisdiction based on a party's substantial sales of product in the forum and the presence there of distributors of its products. *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). In *LSI Industries*, the Federal Circuit ruled that "(g)eneral jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *Id.* The Court found the defendant subject to general jurisdiction, even though it did not have an office, a bank account or any employees in the forum, where it had signed-up multiple distributors in the forum and netted several million dollars a year in sales. *Id.* Other courts have found general jurisdiction based on similar facts. *See, e.g., Mieczrowski v. Masco Corp.*, 997 F. Supp. 782 (E.D. Tex. 1998)(holding that a North Carolina company that had no offices, no employees, no registered agent, and no real or personal property in Texas and was not licensed to do business in Texas, was nonetheless subject to general personal jurisdiction in Texas based on a combination of conventional business contacts (consummating numerous business transactions and shipping product to Texas) and a web site that permits online ordering and order tracking); *B & J Mfg. v. Solar Indus.*, 483 F.2d 594

---

[4] At the other end of the spectrum, *Zippo* found that a passive website does not confer personal jurisdiction. *Zippo*, 952 F. Supp. at 1124; *see also Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34 (D. Mass. 1997). Interactive websites that permitted the exchange of information but which did not permit commercial sales lie in the middle of this spectrum. *Id.* Even if this Court were to find the JumpSport website did not fall into the "clearly doing business" category, JumpSport's systematic and continuous commercial contact with Massachusetts in the sale and promotion of its products via its website tips the scale in favor of finding personal jurisdiction over JumpSport.

11

(8th Cir. 1973) (finding that personal jurisdiction over out-of-state defendant in patent infringement declaratory judgment action comported with due process where defendant sent warning letter into forum, sold products other than that covered by the patent into the forum and advertised its products in national publications, some of which were distributed in the forum).

The breadth of JumpSport's on-going activities and business dealings in the Commonwealth of Massachusetts, as set forth above, and its presumed commitment to continue, if not expand and increase, those activities in the future are sufficient for this Court to exercise general jurisdiction over JumpSport.

### 2.    The Assertion of Jurisdiction Here Comports With Due Process.

   a.    *Defendants have purposefully directed their activities at Massachusetts.*

The substantial and significant activities of JumpSport, both with respect to the patents-in-suit and with respect to other business as well, are set forth above. These activities clearly meet the constitutional standard of "purposeful availment". In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 465 (1985), the United States Supreme Court stated that this aspect of the due process analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts", or of the "unilateral" activity of another person, and held:

> Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U. S. at 465.

By selling and promoting its products in Massachusetts, JumpSport has purposefully availed itself of the privilege of conducting activities within Massachusetts, thus invoking the benefits and protection of its laws. *Hologic*, 36 U.S.P.Q.2d at 1185.

JumpSport is a company that actively markets its products in Massachusetts. Requiring JumpSport to come to Massachusetts to litigate this case is not an overwhelming burden, particularly since the case will likely only required counsel's briefing of the claim preclusion issue and one hearing relating to that briefing. Additionally, although JumpSport's business is based in California, rather than limiting its business to its home state or region, JumpSport has chosen to market and sell its products nationwide. In choosing to do so, JumpSport accepted both the benefits and risks of nationwide business. One of the risks inherent in JumpSport's decision to pursue nationwide sales is the possibility that it could be hailed into Court in a foreign state where its products are being marketed and sold. By marketing and selling its trampoline enclosure products in Massachusetts, it is, or should have been foreseeable that it might be sued in the Commonwealth.

### C. **Hedstrom Submits That This Court Also Has Specific Jurisdiction Over JumpSport.**

Specific jurisdiction over a party exists in a given district if that party has contacts with the district, and/or does business in the district, on matters related to the cause of action in the suit in question. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 465 (1985).

Hedstrom submits that JumpSport's contacts with and business in this District are sufficiently related to the cause of action in this Action and in the Second Action as to confer jurisdiction specifically over JumpSport in Massachusetts.

The breadth of JumpSport's contacts with Massachusetts, is discussed more fully in section B(1) above.

These contacts and business activities relate to the claims made in this Action and the Second Action because what truly underlies those claims is JumpSport's attempt to prevent competition in the sale of trampoline enclosures by Hedstrom and other enclosure manufacturers. That this is the real relief sought by JumpSport is evident from several factors including the fact that:

1.)    JumpSport sued both enclosure manufacturers and their retail customers as defendants in the First Action, seeking injunctive relief to prevent all further sales of enclosures by those entities. Kroll Dec., Exh. B;

2.)    JumpSport joined in the First Action a claim for unfair competition against Jumpking and argued that that claim was substantially related to its claims for patent infringement in that action. *Id.*;

3.)    JumpSport sued Hedstrom and its retail customers in the Second Action knowing full well that customer concerns about the suit could cause those customers to purchase their enclosures from JumpSport instead of Hedstrom. Gannon Dec., Exh. B;

4.)    JumpSport has routinely written Hedstrom's enclosure customers to apprise them of the lawsuit and invite the customers to purchase their enclosures from JumpSport. Gannon Dec., Exh. H;

5.)    JumpSport dropped Wal-Mart as a retail defendant from the Second Action after its licensee, Shen Li, started selling enclosures to Wal-Mart. Gannon Dec., at ¶ 12; and

6.)    JumpSport's website emphasizes comparisons of its trampoline enclosures with those of its competitors including specifically Hedstrom together with the patents-in-suit, as a means to encourage customers to purchase enclosures exclusively from JumpSport. Gannon Dec., Exh. F.

The JumpSport patents asserted in this Action are nothing more than the vehicle being used by JumpSport to further its underlying scheme to prevent competition in the sale of trampoline enclosures. JumpSport's contacts with Massachusetts, including its sales of enclosures to BJ's Wholesale Club, and the accessibility and the highly interactive use of its website in Massachusetts, are directly related to the underlying purpose and objective of this and the Second Action, namely, to prevent competition. Massachusetts has a legitimate interest in seeing to it that JumpSport scheme is not successful.

14

### D.    Venue Is Proper In This Court.

Venue in declaratory judgment actions regarding the invalidity and/or noninfringement of patents is governed by the general venue statute, 28 U.S.C. § 1391(b). *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982). 28 U.S.C. § 1391(b) provides in relevant part that: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides." Under Section 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action was commenced." As demonstrated in sections B and C above JumpSport is subject to personal jurisdiction in Massachusetts. Therefore, venue is proper under 28 U.S.C. § 1391(b)(1).

### E.    This Court Should Deny JumpSport's Motion to Dismiss Because Hedstrom's Declaratory Judgment Action Was Filed Prior to JumpSport's Infringement Action.

JumpSport's Motion to Dismiss should be denied because Hedstrom's declaratory judgment action was brought fifty-seven days prior to JumpSport's infringement action. The Federal Circuit has exclusive over cases such as this which are based, in whole or in part, on 28 U.S.C. § 1388(a). Thus, Federal Circuit law controls this issue. *Chemical Engineering Corp. v. Marlo, Inc.*, 222 U.S.P.Q. 738 (Fed. Cir. 1984).

In *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931 (Fed.Cir. 1993), the Federal Circuit held:

> We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.

> The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action. When the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.

998 F.2d at 937-38.

In a patent case, a later-filed infringement action should yield to a first-filed declaratory suit absent a sound reason that would make it unjust or inefficient to continue the first-filed action. *Id.* Such reasons may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or possibility of consolidation with related litigation, or considerations related to the real party in interest. *Id.*

Additionally, the Federal Circuit and this Court have declined to hear a first-filed declaratory judgment action in favor of a later filed infringement action where the parties were engaged in serious good faith settlement negotiations at the time the declaratory judgment action was filed or where the declaratory plaintiff's sole motivation for filing the declaratory action was based on impermissible forum shopping. *See e.g.*, *Davox Corp. v. Digital Systems Int'l*, 846 F.Supp. 144 (D. Mass. 1993); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996). None of these cases is applicable here. JumpSport's Motion to Dismiss should be denied because: (1) Hedstrom and JumpSport were not engaged in serious, good faith settlement negotiations when Hedstrom filed its declaratory suit; (2) Hedstrom did not engage in impermissive forum shopping when it decided to file this declaratory action; and (3) the convenience of the parties does not require that JumpSport's later-filed infringement action take precedence over Hedstom's first-filed declaratory action.

### 1. The Parties Were Not Engaged In Settlement Negotiations When The Declaratory Judgment Action Was Filed.

Hedstrom and JumpSport were not engaged in settlement negotiations at the time Hedstrom filed this Action. In fact, at the time Hedstrom filed this Action, the parties were already engaged in a litigation where the claims against Hedstrom's non-JumpGuard enclosures were dismissed because of JumpSport's failure to comply with the Patent Local Rules. Despite the Court's dismissal of its claims, JumpSport still threatened to sue Hedstrom at some unspecified time in the future. In fact,

JumpSport filed the Second Action based on the same patents against Hedstrom and several of its customers. As expected, the Second Action implicates Hedstrom's non-JumpGuard enclosures.

### 2. Hedstrom Did Not Engage In Forum Shopping When It Filed This Declaratory Judgment Action In Massachusetts.

Hedstrom did not engage in impermissible forum shopping by filing this Action in Massachusetts. Impermissible forum shopping in the context of a first-filed declaratory judgment action for patent non-infringement has been defined as "seeking out a forum solely on the basis of having the suit heard in a forum where the law or the judiciary is more favorable to one's cause than another." *Roadmaster Corp. v. NordicTrak, Inc.*, 29 U.S.P.Q.2d 1699, 1701 (N.D. Ill. 1993). Conversely, filing suit in a forum that is convenient to the party filing is not the type of forum shopping which is denounced in this type of situation. *Id.*

JumpSport argues that Hedstrom was motivated to file here "to avoid appearing before the same Court that denied Hedstrom's motions for summary judgment as to invalidity of the JumpSport patents, and in which a jury found that Hedstrom's trampoline enclosures infringed valid claims of the JumpSport patents." *See* JumpSport, Inc.'s Motion to Dismiss, at 10. Nothing could be further from the truth.

Hedstrom had sound reasons for filing this Action in Massachusetts. Hedstrom did not choose to file this Action in Massachusetts because this Court is more likely to hold the JumpSport patents invalid or not infringed. Hedstrom chose to file suit in Massachusetts because jurisdiction and venue are proper in Massachusetts, all of the documents from Hedstrom's files that are relevant to its alleged infringement are located at Hedstrom's trial counsel's offices in Massachusetts, this Action is likely to be resolved on summary judgment on the claim preclusion issues, without the need for any witnesses to appear in person, and even if witnesses are ultimately necessary, Massachusetts

is substantially more convenient for Hedstrom and its witnesses than the Northern District of California.

### 3. The Convenience Of The Parties Weighs In Favor Of Litigating Dispute In Massachusetts.

The convenience of the parties and considerations related to the real party in interest dictate that JumpSport's second-filed infringement action not take priority over Hedstrom's first-filed declaratory action. In determining whether convenience is a sound reason to cease to continue a first filed declaratory action, courts consider, among other things, the location of key documents and witnesses. *Serco Services Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1999).

### F. JumpSport Has Failed to Meet Its Burden To Justify Transfer Pursuant to 28 U.S.C. § 1404.

The decision to transfer a case to another forum under §1404(a) rests within the sound discretion of the court. Nevertheless, there is a strong presumption in favor of the plaintiff's choice of forum, and the defendant bears the burden of proving that a transfer is warranted. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("there is ordinarily a strong presumption in favor of the plaintiff's choice of forum"); *Genentech*, 998 F. 2d at 938 (a "first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action"); *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) (there is a "strong presumption in favor of a plaintiff's forum choice [against which] the defendant must bear the burden").

In making its determination as to whether or not to transfer an action pursuant to § 1404, the court must balance several factors, while bearing in mind the fact that plaintiff's choice of forum is entitled to "great weight." *Home Owners Funding Corp. of America v. Centry Bank*, 695 F.Supp. 1343, 1347 (D. Mass. 1988); *Fairview Mach. and Tool Co. v. Oakbrook Int'l, Inc.*, 56 F.Supp.2d 134, 141 (D. Mass. 1999). These factors include: (1) the convenience of the parties and witnesses; (2) the availability of documents; and (3) the interests of justice. *Home Owners, id.*; *Fairview, id.* Of these

18

factors, the convenience to the expected witnesses is "probably the most important factor, and the factor most frequently mentioned." *Brookfield Mach., Inc. v. Calbrit Design*, 929 F.Supp. 491, 501 (D. Mass. 1996); *Fairview, id.*

The "convenience" factor weighs heavily in favor of this Court denying JumpSport's motion to transfer venue. Again, Hedstrom firmly believes that this Action will be resolved on summary judgment on the claim preclusion issues, without the need for any witnesses to appear in person, and even if witnesses are ultimately necessary, Massachusetts is substantially more convenient for Hedstrom's witnesses than the Northern District of California. Restly Dec., at ¶ 4. In addition, Massachusetts is where Hedstrom's documents and trial counsel is located, and Massachusetts has a strong interest in protecting companies who chose to conduct business here. Restly Dec., at ¶ 5. Further, it is neither oppressive nor vexing to JumpSport to have the case proceed in this district. JumpSport is a company that actively markets its products in Massachusetts. Requiring JumpSport to come to Massachusetts to litigate this case is not an overwhelming burden, particularly since the case will likely only required counsel's briefing of the claim preclusion issue and one hearing relating to that briefing. Gannon Dec., at ¶ 17.

JumpSport should not be allowed to charge a party with patent infringement in a remote forum clearly inconvenient to it, its counsel and witnesses, fully litigate the issues for over four weeks in that remote forum, and then force that same party to re-litigate the same dispute regarding other products in that same remote forum. *See GSI Lumonics, Inc. v. Biodiversity, Inc.*, 112 F. Supp. 2d 99, 105 (D. Mass. 2000) (denying defendant's motion to transfer venue in declaratory judgment action and holding that "it is entirely appropriate for [the plaintiff] to have brought a declaratory judgment to vindicate its claim of innocence").

1.    **A Transfer To California Would Not Eliminate or Even Reduce the Purported Risk of "Inconsistent" Rulings.**

Regardless of where this case goes forward, there is no risk of "inconsistent" rulings or judgments. Hedstrom plans to file a motion for summary judgment that JumpSport's renewed claims against Hedstrom's non-JumpGuard enclosures are fully barred by the doctrines of claim preclusion and res judicata. Gannon Decl. at ¶ 17. Because Hedstrom's motion will not depend in any way upon an interpretation of the Local Patent Rules of the Northern District of California, the Northern District is therefore no better equipped to resolve the claim preclusion issue which should dispose of the case, than this District.

## III.    CONCLUSION

As the convenience of the parties and witnesses and the interest of justice are all well served by a trial in Massachusetts, the Court should deny JumpSport's motion to dismiss or transfer this case to California.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Hedstrom requests an opportunity to be heard on this motion.

Respectfully submitted,

HEDSTROM CORPORATION

By Its Attorneys,

Dated: March 18, 2004

THOMAS C. O'KONSKI, BBO #377475
KEVIN GANNON, BBO #640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA 02210
Telephone: (617) 951-2500
Fax: (617) 951-3927

20

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was served by facsimile and Federal Express on

March 18, 2004 to:

> Peter H. Goldsmith
> Christine A. Armatruda
> Townsend and Townsend and Crew, LLP
> Two Embarcadero Center
> 8th Floor
> San Francisco, CA 94111-3834

_____
Kevin Gannon