IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HEDSTROM CORPORATION, )
 )
Plaintiff, )
 )
v. ) Civil Action No. 03-12308 PBS
 )
JUMPSPORT, INC., )
 )
Defendant. )

**PLAINTIFF HEDSTROM CORPORATION'S SUR-REPLY IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(1), 12(B)(2), 12(B)(3) AND 28 U.S.C. § 2201, OR TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**

Pursuant to this Court's Order dated March 29, 2004, Plaintiff Hedstrom Corporation ("Hedstrom") submits this sur-reply in support of its Opposition to Defendant JumpSport, Inc.'s ("JumpSport's") Motion to Dismiss or Transfer. This sur-reply addresses various misstatements of fact and unsupportable arguments made in JumpSport's Reply.

JumpSport contends that judicial economy will be furthered by dismissing Hedstrom's declaratory action here and proceeding with JumpSport's second-filed infringement action in the Northern District of California. Nothing could be further from the truth. JumpSport already had a full and fair opportunity to litigate its infringement claims against **all** of Hedstrom's trampoline enclosure products, including particularly its non-JumpGuard enclosure products, in the First Action in California. However, either by mistake or deliberate choice, JumpSport limited its infringement contentions under Patent Local Rule 3-1 to Hedstrom's JumpGuard enclosure products. Now JumpSport attempts an end run around the Northern District of California's preclusion ruling that effectively dismissed its infringement claims against Hedstrom's non-JumpGuard enclosures to obtain another bite at the apple. This Court can readily and efficiently

determine whether JumpSport's new action is barred by the doctrines of *res judicata* and claim preclusion. In any event, JumpSport is the last party who should seek to bolster its arguments by invoking the principle of judicial economy.

JumpSport directs much of its Reply to its contention that Hedstrom's declaratory relief action does not arise from any of JumpSport's Massachusetts contacts. JumpSport, however, ignores the fact that, under a general jurisdiction analysis, the underlying cause of action need not arise from its contacts from Massachusetts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

JumpSport also ignores Hedstrom's contention that what truly underlies the continuing dispute between the parties is not the validity and infringement of JumpSport's patents but JumpSport's improper and unlawful attempt to prevent competition in the sale of trampoline enclosures. JumpSport counters by arguing that this is not the case because no unfair competition claim has been pled by Hedstrom. JumpSport misses the point.

The most telling evidence that JumpSport's real motive in its litigations with Hedstrom is to prevent competition in the sale of trampoline enclosure products is the fact that JumpSport has sued both Hedstrom and various of its retail customers in those litigations. In the First Action, JumpSport sued five of Hedstrom's retail customers, i.e., Wal-Mart Stores, Inc., Sam's East, Inc., Sam's West, Inc., Alticor, Inc., and Hammacher, Schlemmer & Co., Inc., because they sold allegedly infringing trampoline enclosures manufactured by Hedstrom. After a month long trial in California, the jury returned a verdict that none of these retail customers infringed either of the patents-in-suit.

In the Second Action filed in California, which accuses Hedstrom's non-JumpGuard enclosure products with infringement of the same two patents involved in the First Action, JumpSport names as defendants three additional retail customers of Hedstrom, i.e., Kmart

Corporation, Target Corporation and Toys "R" Us-Delaware, Inc., who were not named in the First Action. None of the retail customers named as defendants in the First Action are named in the Second Action even though they continue to sell Hedstrom's non-JumpGuard enclosures. This clearly illustrates JumpSport's continued attempt to "shake down" Hedstrom's customers even though the jury in the First Action found **no retail customer liability**.

JumpSport argues that as a patent holder, it has the right to engage in this type of activity. However, if, as JumpSport contends, JumpSport's action is not barred by *res judicata* and Hedstrom's enclosures infringe any valid claim of JumpSport's patents, JumpSport would be made whole by a damage award against Hedstrom. JumpSport is not entitled to double recovery for the sales of the same products made by Hedstrom's retail customers to the public. Thus, it should be more than obvious that what truly underlies the on-going dispute between JumpSport and Hedstrom is JumpSport's improper and illegal scheme to gain market share. JumpSport's contacts with Massachusetts are directly related to that dispute.

JumpSport repeats in its Reply its erroneous argument that because it ships its products to its customers in Massachusetts F.O.B., it is not subject to jurisdiction in Massachusetts. As Hedstrom clearly demonstrated in its Opposition, however, if a defendant makes substantial sales within a forum district, it cannot escape jurisdiction and venue in that district simply by requiring shipments to be made F.O.B. outside the forum. *See Buckeye Assoc. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1490 n. 7 (D. Mass. 1985)[1].

JumpSport next alleges that Hedstrom is relying on speculation about the number of

---

[1] JumpSport cites *Cambridge Library Props, Ltd. v. W. Goebel Porzellanfabrick G.m.b.h. & Co. Kg.*, 295 F.3d. 59, 63 n.3 (1st Cir. 2002) in support of this contention that "sales by an independent distributor do not count as contacts by a manufacturer." However, the *Cambridge Library* case is distinguishable. First, the case involved specific jurisdiction rather than general jurisdiction. Second, the case dealt with shipments by a manufacturer to independent distributors and separately incorporated subsidiaries, then to retailers. Here JumpSport ships its competing enclosure products directly to BJ's, its largest retail customer, with no intermediate distributor or other entity. In addition, *Cambridge Library* actually supports Hedstrom's contention that the shipment of large quantities of goods into a state, even F.O.B., can satisfy the minimal contacts prong of the due process inquiry. *Id* at 64.

enclosures JumpSport has sold in Massachusetts. However, in deciding a motion to dismiss for lack of personal jurisdiction, courts generally accept and construe the facts presented by the plaintiff in a light most favorable to the plaintiff. *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). In its Opposition to JumpSport's Motion to Dismiss, Hedstrom came forward with ample evidence that JumpSport maintains "continuous and systematic" contacts with Massachusetts. This evidence establishes that JumpSport sells its competing trampoline enclosure products to Massachusetts residents through BJ's Wholesale Club, which has at least 16 stores in Massachusetts, all of which carry JumpSport's products, that BJ's is JumpSport's largest retail customer in terms of sales volume of those products, and that JumpSport sells its competing products directly to customers in Massachusetts over the Internet. Even though information regarding the volume of JumpSport's sales to BJ's and residents of Massachusetts is peculiarly within its knowledge and possession, JumpSport came forward with no evidence in its Reply regarding the extent of those sales. On the present record, the only conclusion that can be reached is that JumpSport's sales of competing enclosure products in and to Massachusetts, and other contacts with this state, are sufficient to support jurisdiction.

JumpSport's footnote suggestion that Hedstrom's counsel violated Rule 2-100 California Rules of Professional Conduct when he listened to Mr. Publicover's direct and unequivocal threat of suit outside the courtroom in California is ludicrous. The disciplinary rule cited by JumpSport in its Reply is intended to prohibit substantive communications between adversary counsel and a represented party without the consent of the party's counsel. Rule 2-100 Cal. R. Prof. Conduct. There is nothing in the Rule that requires adversary counsel to cover his ears or walk away when a principal of an opposing party approaches and chooses to threaten the counsel's client in a public location. Mr. Publicover routinely talked to the defendants' attorneys

4

in the First Action in plain view of his own counsel. There is simply nothing to establish that any improper or unconsented-to communication took place.

Finally, JumpSport argues, on page 4 of its Reply, that Hedstrom did not serve process on JumpSport in this action until after JumpSport served process in the Second Action. Even if this were true, and it is not, it is irrelevant. This action was filed first, and as discussed in Hedstrom's Opposition, was not a preemptive or premature filing, having been made only after Mr. Publicover's direct and unequivocal threat. JumpSport never in fact formally effected service of process on Hedstrom in the Second Action choosing instead to rely on the waiver of process provisions of the rules. Hedstrom served JumpSport by hand in this action weeks before the waiver due date in the Second Action. Moreover, no answer or other responsive pleading has been filed by Hedstrom in the Second Action. Instead, the parties have filed a stipulation for an extension of time for such a response and for a stay of all proceedings in the Second Action pending this Court's resolution of the instant motion.

For the reasons expressed above and in Hedstrom's Opposition, JumpSport's Motion to Dismiss or Transfer should be denied.

Dated: April 1, 2004

                    Respectfully submitted,

                    HEDSTROM CORPORATION

                    By Its Attorneys,

                    */s/ Ken*

                    THOMAS C. O'KONSKI, BBO #377475
                    KEVIN GANNON, BBO #640931
                    Cesari and McKenna, LLP
                    88 Black Falcon Avenue
                    Boston, MA 02210
                    Telephone: (617) 951-2500
                    Fax: (617) 951-3927

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was served by facsimile and first class mail on April 1, 2004 to:

>Peter H. Goldsmith
>Christine A. Armatruda
>Townsend and Townsend and Crew, LLP
>Two Embarcadero Center
>8th Floor
>San Francisco, CA 94111-3834
>
>Gregg D. Shapiro
>Choate, Hall & Stewart
>53 State Street
>Boston, MA 02109

_____
Kevin Gannon